[880 NYS2d 233]

JEMROCK REALTY CO. LLC, Respondent, v JAY KRUGMAN, Appellant.

First Department, May 19, 2009

APPEARANCES OF COUNSEL

*Barry J. Yellen*, New York City, for appellant.

*The Abramson Law Group, PLLC*, New York City (*Jeff Bodoff* of counsel), for respondent.

## OPINION OF THE COURT

McGUIRE, J.

Jemrock Realty Co. LLC (landlord) owns an apartment building at 210 West 101st Street in Manhattan. On January 31, 2004, a long-time, rent-regulated tenant vacated apartment 16E of the building. Landlord, through its managing agent, retained a contractor to perform work in the apartment to prepare it for a new tenant. According to the managing agent's director of leasing, Higgins, who supervised all repairs in the building, the apartment was in "pretty bad condition" after the long-time tenant vacated it, and she prepared an extensive punch list delineating the work that she wanted the contractor to perform.

The punch list specified the following work:

- "very heavy wall prep" throughout the apartment

- plastering and painting of the entire apartment

- refinishing of all hardwood floors in the apartment

- replacing all wall and baseboard moldings, closet fittings, electrical outlets and switches, and lighting fixtures in the apartment

- installing new door frames, radiator covers, and air conditioner outlets throughout the apartment, and a circuit breaker panel

- rewiring of the entire apartment

- replumbing of the entire apartment

- removing all rubbish and debris from the apartment

- installing ceramic tile flooring, counter tops, drop ceiling, a sink, and new appliances (stove, refrigerator, microwave and dishwasher) in the kitchen

- removing and replacing all kitchen cabinets

- repairing kitchen underflooring

- removing and replacing all floor and wall tiles in both of the apartment's bathrooms

- installing a new sink and toilet in both bathrooms

- replacing all of the shower and sink fixtures (e.g., shower heads, shower rods, towel bars)

The purchase order accompanying the punch list provided a budget for the work of $50,000. By a "check request/installment payment requisition" form, dated February 4, 2004, the managing agent paid the contractor a "deposit on renovation apt 16E" of $20,000; the form noted the "contract price" of the work was $50,000. Landlord paid the contractor the $30,000 balance in three $10,000 installments with the last payment coming on March 23, 2004.[1] Each of the payments was made by check to the contractor from landlord.

After it received the initial $20,000 payment but before it received the first $10,000 installment, the contractor sent landlord an invoice detailing the work it would perform in the apartment. The work listed in the invoice essentially matched the work listed in the punch list. The invoice indicated that the work would be performed for $50,000 and that landlord had already paid $20,000. Between the beginning of February and the end of March 2004, the contractor renovated the apartment, performing the work called for in the punch list (and its invoice) and additional other work that was required in the course of

---

1. The contractor frequently performed work at the building and a practice developed between Higgins and the contractor under which formal contracts were not used between the parties. Instead, when work needed to be performed at the building, Higgins would give the contractor a purchase order to proceed with the work that needed to be performed, which was reflected in a punch list, and a deposit check, i.e., an initial payment. Higgins then would provide the contractor with periodic payments as the work progressed, with a final payment made upon the completion of the work.

the project. The contractor sent the managing agent invoices for the additional work, which were paid by landlord.

Landlord and respondent Jay Krugman (tenant) entered into a lease for apartment 16E that commenced on April 1, 2004. Attached to the lease was a certification calculating the rent based on increases permitted by the Rent Stabilization Law—a vacancy increase, an increase for each year of the prior tenant's occupancy and an increase for the renovations the contractor performed (*see* Rent Stabilization Code [9 NYCRR] § 2522.4 [a]). The monthly rent for the apartment, which was $920.12 for the former, long-time tenant, was listed as $3,600. Because the monthly rent exceeded $2,000, the apartment was no longer subject to regulation under the Rent Stabilization Law (*see* Rent Stabilization Law [Administrative Code of City of NY] § 26-504.2).

In October 2005 landlord commenced an action in Civil Court seeking rent arrears and possession of the apartment based on tenant's failure to pay rent. Tenant answered the action, asserting that the rent was illegal under the Rent Stabilization Law because the renovations made by landlord did not qualify as "improvements" that would support a rent increase, and that landlord breached the warranty of habitability. Tenant claimed that he was entitled to a rent abatement for the breach of the warranty of habitability and treble damages for a willful rent overcharge.

At a nonjury trial, Higgins and an employee of the contractor testified, and the punch list, invoices and cancelled checks from landlord to the contractor were admitted into evidence. Civil Court concluded that while 9 NYCRR 2522.4 (a) authorizes a rent increase of one fortieth of the cost of certain improvements that a landlord makes to an apartment, landlord failed to establish that it was entitled to that increase. Although "improvements" to the apartment, which are considered in calculating the amount, if any, of a rent increase, had been made, the contractor also performed repair work, which is not. Because landlord failed to offer evidence distinguishing costs incurred in making improvements from costs incurred in performing repair work, the court stated that it could not determine how much money landlord had spent on improvements. Accordingly, although the court found that the contractor had performed the work listed on the punch list and that these renovations were "extensive" and "substantial," the court ruled that landlord was not entitled to any rent increase based on improvements.

Subtracting from tenant's rent the portion founded on the improvements, the court determined that the rent fell below $2,000 and the unit thus was subject to the Rent Stabilization Law.[2] The court rejected tenant's claim for treble damages based on the rent overcharge, finding that the overcharge was not willful, but found that tenant was entitled to an abatement of 15% of the rent between June 2004 and September 2005 because landlord breached the warranty of habitability by permitting a persistent leak to occur in a bedroom. Adding the rent overcharged ($42,339.60) and the rent abatement ($2,994.40) and subtracting the rent arrears ($7,486.08), Civil Court entered a judgment in favor of tenant in the amount of $37,847.92.

Tenant appealed to Appellate Term from the judgment to the extent it denied his claim for treble damages, and landlord crossappealed to the extent the judgment determined that landlord was not entitled to a rent increase for improvements and that it breached the warranty of habitability. The Appellate Term, over a dissent, modified the judgment,[3] determining both that landlord was entitled to a rent increase for improvements and that, as a result of that increase, the monthly rent exceeded $2,000; Appellate Term remanded the matter to Civil Court for a determination of the rent arrears due to landlord. The court wrote, in pertinent part, that

> "[l]andlord established the amount spent on the apartment renovations here involved through the submission of the specification sheet, i.e. a punch list of the renovations needed in the apartment, a contractor's invoice, cancelled checks tendered contemporaneously with the work, and the contractor's trial testimony indicating that all the work delineated in the invoice was completed and paid in full. Where, as here, the work performed included removing and installing kitchen cabinets, installing new plumbing, rewiring the electrical lines, tearing down and rebuilding walls, renovating and replacing floors, and installing new appliances, it constituted improvements rather than repairs and main-

---

**2.** As a result of the disallowance of the rent increase for improvements, Civil Court found that tenant's rent should have been $1,247.68 per month from the commencement of the lease.

**3.** While Appellate Term stated that it was reversing the judgment, it did not disturb those portions of the judgment determining that landlord breached the warranty of habitability and awarding tenant a 15% rent abatement.

tenance. Therefore no breakdown of the costs was necessary to distinguish the cost of allowable improvements from the costs of repair or maintenance items" (18 Misc 3d 15, 17 [2007] [internal quotation marks, brackets and citations omitted]).

The dissenting Justice noted that landlord bore the burden of proving its entitlement to an increase based on improvements and concluded that landlord's proof failed to satisfy that burden because it did not differentiate between costs incurred for repair work and costs incurred for making improvements (*id.* at 22). Tenant appeals to this Court by permission of Appellate Term.[4]

The rent that may be charged with respect to the apartment is governed by the Rent Stabilization Law. Under 9 NYCRR 2522.4 (a) (1), a landlord "is entitled to a rent increase where there has been a substantial increase . . . of dwelling space or . . . installation of new equipment or *improvements,* or new furniture or furnishings" (emphasis added). When a landlord makes improvements to an apartment under section 2522.4 (a) (1), it is entitled to an increase in rent for the apartment of one fortieth of the total cost of the improvements (§ 2522.4 [a] [4]).

As the Second Department has observed:

"in evaluating the legitimacy of an [individual apartment improvement rent increase under section 2522.4 (a)], the court is required to determine (1) whether the owner made the improvements to the apartment during the relevant time period, (2) whether those improvements constitute legitimate individual apartment improvements within the meaning of the regulations, (3) the total cost of the improvements, (4) one fortieth of that cost, and (5) the sum of one fortieth of the costs plus the monthly rent level after any other increases to which the owner may be entitled" (*Matter of Rockaway One Co., LLC v Wiggins,* 35 AD3d 36, 42 [2006]).

Additionally, as stated in a policy statement of the Division of Housing and Community Renewal (DHCR), the agency charged with administering the Rent Stabilization Law:

---

4. Landlord did not seek permission to cross-appeal from those portions of Appellate Term's order that are adverse to it—the implicit affirmance of the determination that landlord breached the warranty of habitability and the award to tenant of a 15% rent abatement. Accordingly, landlord is precluded from seeking affirmative relief from those portions of Appellate Term's order (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144, 151 n 3 [2002]; *see also Hecht v City of New York,* 60 NY2d 57, 61-62 [1983]).

"[a]ny claimed . . . individual apartment improvement cost must be supported by adequate documentation which should include at least one of the following:

"1) Cancelled check(s) contemporaneous with the completion of the work;

"2) Invoice receipt marked paid in full contemporaneous with the completion of the work;

"3) Signed contract agreement;

"4) Contractor's affidavit indicating that the installation was completed and paid in full" (DHCR, Office of Rent Administration, Policy Statement 90-10; see Rockaway One Co., LLC, supra; Matter of Hanjorgiris v Lynch, 298 AD2d 251, 252 [2002]).

As the trial court found, (1) the contractor performed the work listed on the punch list prior to tenant moving into the apartment, (2) some of the work constituted "improvements" and some repairs, and (3) landlord spent at least $50,000 on the renovations. Moreover, as Appellate Term found, adding one fortieth of the cost of the renovations to the amount of rent to which landlord is entitled after other increases yields a rent in excess of $2,000,[5] which would remove the apartment from the Rent Stabilization Law. The issue of whether landlord is entitled to a rent increase based on the improvements turns on whether landlord was required to itemize the costs it incurred during the renovation, distinguishing between amounts spent on improvements, on the one hand, and repairs, on the other. Because landlord was not obligated to itemize the costs, we agree with Appellate Term that landlord is entitled to a rent increase based on the renovations.

DHCR's interpretation of the regulations implementing the Rent Stabilization Law is entitled to deference (see Matter of 900 W. End Ave. Tenants Assn. v New York State Div. of Hous. & Community Renewal, 53 AD3d 436, 438 [2008]; Matter of

_____

5. Both the trial court and Appellate Term found that landlord spent at least $50,000 in renovating the apartment, without making any finding as to the specific amount of money spent in the course of the project. Regardless of whether landlord spent more than $50,000 on the project, that it spent at least $50,000 is sufficient to remove the apartment from the rent stabilization scheme (i.e., one fortieth of $50,000 = $1,250 + $1,247.68 [rent to which landlord is otherwise entitled] = $2,497.68), provided landlord is otherwise entitled to the increase. Indeed, expending slightly more than $30,000 would be sufficient.

*Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 425, 429 [2007], *affd* 11 NY3d 859 [2008]). DHCR has determined that a landlord is not required to "submit a breakdown of the cost of each item in . . . *extensive* renovation work" if the landlord "submitted the required evidence to show that the claimed work was done" and "that it spent the claimed costs" (*Matter of Levene*, DHCR Administrative Review docket No. RI410003RK, at 2-3 [Dec. 15, 2003] [emphasis added]; *see Matter of Dorfman*, DHCR Administrative Review docket No. TE210001RT, at 2 [July 8, 2005] [landlord not required to break down costs to distinguish cost of improvements from cost of repairs where landlord removed and replaced kitchen cabinets, and installed new plumbing, new kitchen flooring and kitchen appliances]; *Matter of Executive Towers at Lido, LLC*, Administrative Review docket No. OD710043RO/OD710082RT, at 4 [Nov. 22, 2000] ["Although the tenants seek an item-by-item breakdown of the cost, the DHCR allows some flexibility on this requirement in cases where *extensive* renovations are performed by a single contractor and the contract amount is agreed upon by the parties without cost itemization" (emphasis added)]). This principle is consistent with another determination of DHCR—work that would generally be characterized as maintenance or repair, when performed in connection with renovations that qualify as an improvement, will be characterized as part of the improvement (*Matter of Purdy*, DHCR Administrative Review docket No. QH410023RT, at 3 [May 16, 2003]).

Here, the renovations performed by the contractor unquestionably were extensive. Indeed, the trial court repeatedly characterized the renovations as "extensive." Moreover, we agree with the trial court's findings of fact regarding the scope of the renovations, that they were in fact performed and that they cost at least $50,000.

We disagree, however, with the trial court on a point of law. As discussed above, it is DHCR's view that when extensive renovation work is performed in an apartment, a landlord is not required to submit evidence differentiating between the cost of improvements and the cost of repairs. Rather, a landlord is entitled to a rent increase for improvements to an apartment based on extensive renovations if the landlord submits evidence establishing "that it spent the claimed costs" (*Matter of Levene, supra* at 3) and "there is no set standard of specificity for such evidence" (*Matter of Purdy, supra* at 3). As Appellate Term cor-

rectly concluded, "[l]andlord established the amount spent on the apartment renovations here involved through the submission of the . . . punch list of the renovations needed in the apartment, a contractor's invoice, cancelled checks tendered contemporaneously with the work, and the contractor's trial testimony indicating that all the work delineated in the invoice was completed and paid in full," and that this evidence satisfied several of the criteria listed in Policy Statement 90-10 (18 Misc 3d at 17-18; *see Matter of Levene, supra* at 2-3; *Matter of Purdy, supra* at 1, 3; *Matter of Starosolska*, DHCR Administrative Review docket No. RC410009RT, at 2 [Apr. 24, 2003]; *see also Matter of Executive Towers at Lido, LLC, supra* at 4).

The dissent errs in suggesting that we fail to give appropriate deference to the trial court's findings of fact. As is evident from the preceding discussion, we agree with and do not disturb the trial court's findings of fact with respect to the renovations. The trial court's misstep was in concluding that landlord was required to submit evidence differentiating between the cost of improvements and the cost of repairs—a *legal* error.

The dissent asserts that the work did not entail a "total" or "gut" renovation of the apartment. This assertion is irrelevant. The controlling inquiry, as articulated by DHCR, the agency charged with enforcing the Rent Stabilization Law and possessed of particular expertise in that area of law, is whether the renovations were "extensive" (*Matter of Levene, supra* at 2; *see Matter of Dorfman, supra* at 2; *Matter of Executive Towers at Lido, LLC, supra* at 4). The dissent cites no authority that would support the proposition—which is at odds with the ordinary meaning of the word "extensive"—that only "total" or "gut" renovations are "extensive." Where, as here, the renovations are "extensive," the landlord is not required to provide a breakdown of the costs it incurred.

*Matter of Charles Birdoff & Co. v New York State Div. of Hous. & Community Renewal* (204 AD2d 630 [1994]), cited by the dissent, does not compel a different conclusion. In that case, the Second Department stated that a landlord seeking a rent increase based on improvements to an apartment must "submit documentation proving each specific improvement" and that "[t]he documentation must be sufficiently specific to enable the DHCR to verify, by cost breakdown, whether some of the work claimed is merely repairs or decorating" (*id.* at 630-631). The only support offered for that statement is an unreported Supreme Court decision from 1984 that was affirmed without

opinion by this Court (*Matter of Eberhart Bros. v New York City Conciliation & Appeals Bd.*, Sup Ct, NY County, Edwards, J., *affd* 99 AD2d 930 [1984]). More critically, however, there is no indication that "extensive" renovations had been performed by the landlord in *Charles Birdoff & Co.* Accordingly, *Charles Birdoff & Co.* cannot reasonably be read to undercut the rule that where renovations are "extensive" the landlord is not required to provide a breakdown of the costs it incurred (*see Matter of Seelig v Koehler*, 76 NY2d 87, 92 [1990], *cert denied* 498 US 847 [1990] [distinguishing prior decisions and observing that "the identification and weighing of all the unique and particular facts of each case governs"]).

Even more fundamentally, *Charles Birdoff & Co.* was decided *before* the DHCR administrative determinations setting forth the applicable rule when "extensive" renovations are performed. As is evident, our disposition of this appeal is not "in direct contravention of courts' pronouncements" regarding the proof required to support a rent increase based on improvements.[6] To the contrary, the dissent's position is contradicted by the governing law.

The dissent writes that "[w]hile the majority posits that an itemization is not necessary where ordinary repairs are done concomitantly with extensive renovations, it offers no valid policy reason for applying the same standard where significant repairs are done concomitantly with significant renovations." Apparently, the dissent would not require a landlord to itemize its costs in an "extensive" renovation project where repairs are performed in connection with the project that are "ordinary," but would require the landlord to itemize its costs in an "extensive" renovation project where the repairs that are performed are "significant." Suffice it to say, the DHCR decisions discussed above holding that a landlord is not required to

---

**6.** *Matter of 425 3rd Ave. Realty Co. v New York State Div. of Hous. & Community Renewal* (29 AD3d 332 [2006]), *Matter of 201 E. 81st St. Assoc. v New York State Div. of Hous. & Community Renewal* (288 AD2d 89 [2001]), *Matter of Mayfair York Co. v New York State Div. of Hous. & Community Renewal* (240 AD2d 158 [1997]) and *Matter of Linden v New York State Div. of Hous. & Community Renewal* (217 AD2d 407 [1995]) afford no support for the dissent's conclusion that landlord's evidence was insufficient to establish that it was entitled to a rent increase. *Matter of 425 3rd Ave. Realty Co.*, *Matter of Mayfair York Co.* and *Matter of Linden* support the unremarkable proposition that maintenance and repair work do not qualify as "improvements"; *Matter of 201 E. 81st St. Assoc.* held that the landlord had not performed certain work that it claimed it had, and that other work that was performed by the landlord was maintenance, not improvements.

itemize its costs where the renovation work is "extensive" recognize no such distinction. In concluding that landlord was not required to itemize its costs we simply give effect to the rule adopted by DHCR when "extensive" renovations are performed.

Moreover, nothing supports the dissent's implicit conclusion that our obligation to give deference to the rule adopted by DHCR is conditioned upon a judicial determination that it is supported by a "valid policy." To the contrary, acceptance of the dissent's position would undermine the rationale for judicial deference to such agency determinations, a rationale that is itself grounded on public policy considerations: the special competence and expertise of the administrative agency (*see Matter of John Paterno, Inc. v Curiale*, 88 NY2d 328 [1996]). Accordingly, we need not be concerned with whether DHCR's rule in fact reflects a policy determination that where extensive improvements are made, requiring a landlord to itemize the costs of any and all repairs that also are done would impose an undue burden on the landlord and unduly complicate fact-finding proceedings. We note, however, that if the rule were otherwise, in this case the apartment would remain subject to the Rent Stabilization Law only if repairs accounted for some $20,000 of the $50,000 expended on the apartment.

The dissent also writes that

"[t]he disallowance of . . . expense[s for repair and maintenance] is reasonable even when the work is done at the same time or in connection with an allowed expense or a substantial renovation. Significant repair and maintenance work keep an apartment in good condition and are not the kind of more permanent, long-lasting work, allowed as an improvement, such as running new electrical lines for air conditioning or installing a completely new floor, that improve and upgrade the apartment. Thus, substantial repair type work gains no special significance when done in connection with or at the same time as other major work warranting an increase in rent. The need for an item-by-item cost breakdown of substantial repairs is essential, even when significant renovations are done, to ensure that owners receive no more of a permanent increase than they are entitled to and that the tenant is not overcharged for a rent increase that becomes a permanent part of the rent and remains in place after the owner recoups its cost of the improvements."

Whether the rule the dissent would embrace is more reasonable is irrelevant. Its rule is unsupported by any authority and is contrary to the decisions of the agency with expertise in and charged by law with responsibility for issues arising under the Rent Stabilization Law (*Matter of Levene, supra* at 2; *see Matter of Dorfman, supra* at 2; *Matter of Executive Towers at Lido, LLC, supra* at 4). Contrary to the dissent, its rule certainly is not "essential." Similarly, the dissent's assertion that "a specificity requirement . . . [is not] inconsistent with DHCR Policy Statement 90-10" is contrary to DHCR precedent (*Matter of Purdy, supra* at 3 ["there is no set standard of specificity for such evidence"]).

Accordingly, the order of the Appellate Term, First Department, entered on or about December 4, 2007, which, in effect, modified the order of Civil Court, New York County (Jean T. Schneider, J.), entered on or about September 29, 2006, after a nonjury trial, directing judgment in respondent tenant's favor in the amount of $37,847.92, to the extent of awarding possession of the apartment to petitioner landlord, declaring that landlord is entitled to a rent increase above the $2,000 luxury decontrol threshold for improvements and remanding the matter to Civil Court for a determination of the rent arrears owed by tenant to landlord, should be affirmed, without costs.

RENWICK, J. (dissenting). I respectfully dissent. In my view, Civil Court properly found that the owner's proof lacked the specificity required to enable the court to distinguish the cost of significant improvements from the cost of significant repairs. The majority, however, now determines that no breakdown of cost is necessary to distinguish between the cost of allowable significant improvements and nonallowable significant repairs where " '*extensive* renovations are performed by a single contractor and the contract amount is agreed upon by the parties without cost itemization.' " Like Appellate Term, the majority cites not a single case for this broad proposition that appears to be in direct contravention of courts' pronouncements that "the documentation must be sufficiently specific to enable the DHCR [or, as here, Civil Court] to verify, by cost breakdown, whether some of the work claimed is merely repairs or decorating, for which an increase is not authorized" (*Matter of Charles Birdoff & Co. v New York State Div. of Hous. & Community Renewal*, 204 AD2d 630, 630-631 [2d Dept 1994], citing *Matter of Eberhart*

*Bros. v New York City Conciliation & Appeals Bd.*, Sup Ct, NY County, Edwards, J., *affd* 99 AD2d 930 [1984]).

Instead, the majority relies on DHCR's precedents under DHCR Policy Statement 90-10, holding such a breakdown unnecessary. However, what the majority overlooks is that in interpreting Policy Statement 90-10, DHCR has held that an itemization of cost is obviated only where ordinary repairs are performed along with significant repairs or a total renovation of the apartment. That is not the situation here, where there were both significant repairs and significant renovations (*see e.g. Matter of Levene*, DCHR Administrative Review docket No. RI410003RK [Dec. 15, 2003] [claimed improvements were a total renovation and any repair items done in conjunction were properly included in allowable costs, and lack of breakdown of each item's cost did not bar rent increase since owner submitted required evidence to show the claimed work was done]).

We simply cannot overlook that Civil Court, as the factfinder, found that the work on the subject apartment was not a total or gut renovation. While Civil Court acknowledged that upgraded kitchen appliances, upgraded electrical lines and new plumbing comprised allowable improvements, Civil Court also explicitly found that

> "it is clear that a substantial portion of the work done was repair to severely damaged walls and woodwork in the apartment, to repair the kitchen underflooring, to refinish the wood floors, and to plaster and paint the entire apartment. There is no reliable contemporaneous evidence in this record that breaks down the cost of the work so that the court can distinguish between the cost of these extensive repairs and the cost of allowable improvements like upgraded kitchen appliances and cabinets, upgraded electrical lines for air conditioning, new plumbing, and the like."

The majority has not shown any factual (or legal) basis for disturbing Civil Court's findings that the work herein was not a total renovation as it involved both substantial repairs and substantial renovations. Indeed, an officer of the owner's managing agent testified that, after the long-term tenant had vacated, she inspected the apartment and found it "in a very bad condition," as "it had not been touched in 25 years or more." She explained, "[E]verything was worn, outdated, outmoded, dirty and in general disrepair." There was also ev-

idence of water leak damage throughout the apartment. After her walkthrough, she prepared a "punch list" of the work to be done in the apartment, set a budget of $50,000, and assigned the work to a contractor. The contractor's employee who supervised the work not only testified that the job was not a "gut renovation" but he provided a detailed account of the "very poor conditions" in which he found the apartment once the work started. He explained that existing masonry and cement of several walls had deteriorated due to neglected leaks and poor condition, and as a result, the contractor had to rebuild a wall in the main bedroom and repair the masonry and cement walls in the living room, dining room, bedroom and bathroom. After repairing the walls, the contractor plastered and painted the whole apartment, and repaired the underflooring of the kitchen. The contractor also replaced the deteriorating woodwork around the radiators and windows in the living room, dining room and main bedroom, and refinished the wood floors.

Judicial deference is due to Civil Court, as the factfinder, in the same fashion as would be the case if the issue arose before DHCR (see *Matter of Oriental Blvd. Co. v New York City Conciliation & Appeals Bd.*, 92 AD2d 470, 470-471 [1983], *affd* 60 NY2d 633 [1983]). In a nonpayment action, the owner may establish the validity of an individual apartment improvement increase in the same manner as in a DHCR proceeding, that is, by showing a likelihood of success were the matter before DHCR (*cf. Matter of Rockaway One Co., LLC v Wiggins*, 35 AD3d 36 [2006]). The Court of Appeals has noted that the courts should defer to DHCR in such matters as factual determinations (see *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal*, 75 NY2d 206 [1989]). Thus, since the uncontroverted evidence adduced at trial was that the subject apartment was in a substantial state of disrepair due to leaks and to the failure to maintain it for many years, Civil Court's factual findings of the substantial repair work that was done in the apartment must be afforded great deference.

Moreover, it is consistent with the statutory scheme of the Rent Stabilization Code to conclude that a specificity requirement—an item-by-item cost breakdown of the work done—is not obviated where substantial repairs are done in connection with or contemporaneously with substantial renovations short of a total renovation. Repair and maintenance work, like paint-

ing, plastering, sanding and refinishing a floor, are not allowed because they are expected to be done in the normal course of apartment usage merely to maintain an apartment in good condition (*see e.g. Matter of 425 3rd Ave. Realty Co. v New York State Div. of Hous. & Community Renewal*, 29 AD3d 332, 333 [2006] ["Invoices for painting, plastering and floor polishing, among other things, were correctly disallowed because they were for ordinary maintenance and repair, rather than for improvements"]; *Matter of 201 E. 81st St. Assoc. v New York State Div. of Hous. & Community Renewal*, 288 AD2d 89 [2001] [painting, plastering and demolition largely routine when done in conjunction with plumbing and rewiring]; *Matter of Linden v New York State Div. of Hous. & Community Renewal*, 217 AD2d 407 [1995] [deference due to DHCR's finding that invoices showed nothing more than normal maintenance]; *Matter of Mayfair York Co. v New York State Div. of Hous. & Community Renewal*, 240 AD2d 158, 158 [1997] ["disallowed work was for painting, skim coating, partial floor replacement and partial rewiring"]).

While the majority posits that an itemization is not necessary where ordinary repairs are done concomitantly with extensive renovations, it offers no valid policy reason for applying the same standard where significant repairs are done concomitantly with significant renovations. The disallowance of such expense is reasonable even when the work is done at the same time or in connection with an allowed expense or a substantial renovation. Significant repair and maintenance work keep an apartment in good condition and are not the kind of more permanent, long-lasting work, allowed as an improvement, such as running new electrical lines for air conditioning or installing a completely new floor, that improve and upgrade the apartment. Thus, substantial repair type work gains no special significance when done in connection with or at the same time as other major work warranting an increase in rent. The need for an item-by-item cost breakdown of substantial repairs is essential, even when significant renovations are done, to ensure that owners receive no more of a permanent increase than they are entitled to and the tenant is not overcharged for a rent increase that becomes a permanent part of the rent and remains in place after the owner recoups its cost of the improvements. Otherwise, a landlord might be encouraged to ignore routine repairs in an apartment with a long-term tenant until the apartment becomes vacant.

Nor is a specificity requirement, within the particular circumstances of this case, inconsistent with DHCR Policy Statement 90-10, which sets forth the proof that should be submitted to confirm a claim for improvements. "Under the plain wording of the policy statement, submission of [the suggested] proof does not necessarily end DHCR's inquiry [or as here, the court's inquiry] and DHCR may conduct such inquiry as it deems appropriate to determine compliance with the law it enforces" (*Matter of 201 E. 81st St. Assoc.*, 288 AD2d at 90 [even though landlord submitted evidence falling within all four categories of Policy Statement 90-10, DHCR could still conduct inquiry]). While Policy Statement 90-10 does not expressly require a cost breakdown in each instance, DHCR's authority to require a breakdown is implicit in its duty to verify whether some of the work claimed is merely repairs or maintenance. Thus, in view of the undisputed evidence that, following the vacancy, the apartment was found to be in great disrepair, such that it looked like "it had not been touched in 25 years," the contractor's invoice that billed a lump sum of $50,000 was inadequate proof to enable the court to distinguish the cost of improvements from the cost of substantial repairs.

Nor did the owner remedy the deficiency in its proof via testimony from any of its witnesses. The managing agent unilaterally set forth the $50,000 alleged price of the improvements and repairs without receiving an estimate, invoice, or contract and made payment without having consulted the contractor. Moreover, the contractor never saw the apartment before the scope of the work and price were unilaterally set by the managing agent. Under the circumstances, Civil Court properly rejected the contractor's attempt to confirm the estimate as an after-the-fact itemization. More importantly, the contractor's attempt to itemize the work was itself insufficient since it itemized the cost into broad categories that failed to distinguish the cost of allowable improvements from the cost of substantial repairs.

For the foregoing reasons, the decision of Civil Court finding that the owner failed to meet its burden to be entitled to an individual apartment improvement rent increase is supported by the facts and the law. The owner was required to itemize costs in order to distinguish repairs from improvements once the record established that a substantial portion of the work consti-

tuted repairs necessitated by long-term neglect in the maintenance of the apartment. Accordingly, the order and judgment of Civil Court should be affirmed.

SAXE, J.P., and SWEENY, J., concur with McGUIRE, J.; RENWICK and FREEDMAN, JJ., dissent in a separate opinion by RENWICK, J.

Order of the Appellate Term, First Department, entered on or about December 4, 2007, affirmed, without costs.