OPINION OF THE COURT
Peter H. Moulton, J.
This case presents a novel issue: May a public agency rationally disqualify an ex-criminal offender from an employment opportunity by ascribing guilt to that individual for a higher offense than the offense for which that individual accepted guilt and was later awarded a certificate of relief from disabilities (CRD)?
A CRD is intended to remove bars to employment for ex-criminal offenders. The statute, as codified in the Correction Law, provides that
“[a] certificate of relief from disabilities may be granted as provided in this article to relieve an eligible offender of any forfeiture or disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein” (see Correction Law § 701 [1]).
The “relief” granted by the statute is directed at the criminal offender and inures to the offender’s benefit as a potential employee. Furthermore, section 753 (2) of the Correction Law states,
“[i]n making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall also give consideration to a certificate of relief from disabilities or a certificate of good conduct issued to the applicant, which certificate shall create a presumption of rehabilitation in regard to the offense or offenses specified therein.”
Petitioner Karen McMillan commenced this CPLR article 78 proceeding to annul and vacate a determination (the determination) by the New York City Civil Service Commission (CSC), which affirmed the New York City Department of Citywide Administrative Services’ (DCAS) decision to disqualify petitioner from an eligible list of candidates for a DCAS special officer position. The determination was based on the termination of petitioner’s prior public employment as a school safety agent with the New York City Police Department (NYPD).
Respondents initially cross-moved, pursuant to CPLR 7804 (f), for an order dismissing the petition. Respondents argued *396 that the petition failed to state a cause of action, because when petitioner appealed her disqualification to CSC, it affirmed its findings after a careful review of the record. Absent evidence that CSC’s decision was arbitrary or capricious, or that CSC clearly abused its discretion, respondents argued that the decision to affirm petitioner’s disqualification had to be upheld. Additionally, respondents argued that the petition was time-barred.
By a decision and order dated November 7, 2014, this court noted that respondents’ cross motion was withdrawn as to the timeliness of the proceeding, and denied respondents’ argument that petitioner failed to state a cause of action. The November 7, 2014 decision and order also directed respondents to submit an answer on or before November 17, 2014. Respondents timely served their answer on November 17, 2014.
Background
Petitioner was employed by the NYPD as a school safety agent from 1984 through 2000. The NYPD terminated petitioner’s employment in 2000 based on its internal findings that she lacked the necessary character for a law enforcement position. That determination was based on the findings of a disciplinary hearing before the NYPD Trials Commissioner. During that disciplinary hearing, the NYPD Trials Commissioner charged petitioner with having violated Penal Law § 220.41, the felony crime of selling a controlled substance.[1] At the time of the disciplinary hearing, petitioner had already appeared in criminal court, and had entered a plea of “not guilty” to that crime. At the hearing, the NYPD called two detectives who submitted testimony that petitioner had been inside of an apartment, seated at a table containing narcotics paraphernalia in plain view, and had been arrested shortly thereafter in possession of $100 in prerecorded currency. Notably, neither one of the detectives testified to actually seeing petitioner selling narcotics. Nevertheless, after listening to the testimony of the detectives *397 as well as petitioner, the NYPD Trials Commissioner found petitioner guilty of the charged specification of selling a controlled substance in violation of Penal Law § 220.41, and recommended that she be terminated from her employment based on her engagement in disqualifying conduct. A few days after the NYPD Trials Commissioner’s determination, petitioner appeared in criminal court once again, and pleaded guilty to the crime of attempted criminal facilitation, a class B misdemeanor, in violation of Penal Law §§ 110.00, 115.00 (l),[2] rather than felony sale of a controlled substance (the crime she was originally charged with).
As set forth in her petition, following her termination, petitioner obtained the following legal privileges: (1) On May 23, 2001, she was given a CRD from Judge Ethan Greenberg of the Bronx County Criminal Court; (2) On June 7, 2001, she received a security guard license from the New York Department of State Licensing Division; and (3) On February 17, 2009, the New York City Police Department approved her application for a residential handgun license. Beginning in 2001, petitioner obtained new employment with Cambridge Security, and in that capacity worked with and around several New York City residential buildings and agencies. In 2004, she left Cambridge Security to work for Tristar Security, a contractor for DCAS, and counted among her responsibilities guarding several DCAS buildings, including the Brooklyn Municipal Building where DCAS’s Brooklyn offices are located. At the time of the filing of this petition, petitioner was still working at DCAS’s Brooklyn offices, albeit through a different contracting company.
On October 23, 2010, petitioner sat for a civil service examination for the title of DCAS special officer, and was given a list number of 1433. On May 30, 2012, petitioner attended a preemployment meeting, like other individuals on the eligible list, and completed a City of New York comprehensive personnel *398 document, which included questions about her arrest and conviction history. Petitioner completed the document, and included in her response references to two prior police contacts: a 1996 plea to the violation of disorderly conduct, and the aforementioned 2000 attempted criminal facilitation plea. She also included her CRD in the response. On July 16, 2012, petitioner received a notice of proposed personnel action letter from DCAS stating that an investigator assigned to conduct her character and background check had found her “not qualified” for a position as a DCAS special officer.
Specifically, the letter from DCAS stated that petitioner would be “found not qualified for [a] special officer [position] for lacking the satisfactory character needed for this sensitive law enforcement position.” The letter went on to reference petitioner’s participation in a “drug enterprise” while serving as an NYPD school safety agent as evidence of her unsatisfactory character. Indeed, the DCAS letter stated that its determination rested on petitioner’s termination in 2000 based on “NYPD departmental charges” of misconduct brought against petitioner due to her selling a controlled substance while working as an NYPD school safety agent. Even though petitioner ultimately accepted a plea to the offense of attempted criminal facilitation, DCAS’s letter alluded to petitioner’s participation in the higher offense of actually selling a controlled substance while working as an NYPD school safety agent. Furthermore, DCAS’s letter to petitioner did not mention the CRD that petitioner had included in her response. Instead, the letter explained character disqualification as follows:
“Section 50.4 of the NYS civil service law and rule 4.3.2., of the personnel rules and regulations of the City of New York and notice of examination for special officer exam no 149, state, in sum and substance, that proof of good character and satisfactory background and reputation shall be deemed a part of the established minimum requirements and qualifications; and will be absolute prerequisites to appointment . . . An eligible [candidate] who has been dismissed or resigned from a position in public service for misconduct may be disqualified.”
On or about July 18, 2012, petitioner sent a letter to DCAS asking it to reconsider its decision to disqualify her from a position as a DCAS special officer. In her letter, petitioner highlighted her prior employment as a contract security officer *399 working at DCAS’s Brooklyn offices as a basis for her eligibility. Petitioner acknowledged that she had “problems with the law several years ago,” but stated that she had made positive changes in her life since that time. On August 1, 2012, petitioner received another notice of proposed personnel action letter stating that she was “not qualified for consideration” as a DCAS special officer based on her character, prior public employment, and background. Shortly after receipt of that letter, petitioner again requested reconsideration for a position as a DCAS special officer.
On or about August 17, 2012, petitioner appealed DCAS’s disqualification decision to CSC. Petitioner submitted documentation to CSC in support of her appeal. On March 5, 2014, CSC held a hearing at which petitioner appeared and testified on her own behalf. At the hearing, DCAS submitted a written report and presented the testimony of its investigative personnel to support its decision to disqualify petitioner. After the hearing, petitioner submitted a post-hearing brief. On April 14, 2014, CSC affirmed DCAS’s disqualification of petitioner for the title of DCAS special officer. CSC explained its determination as follows:
“We note that DCAS’s disqualification of Appellant under NY Civil Service Law Section 50 [4] [e] based on her unsatisfactory public employment, namely her termination from a School Safety Officer position in 2000, is alone sufficient to sustain the disqualification and we affirm on that basis. Were we to also consider Appellant’s prior criminal history as a basis for her disqualification, we would do so in light of her remarkable recovery from her dependence on illicit substances. Nonetheless, the position for which Appellant seeks to be qualified is a potentially armed one, for which the highest standards need be applied. Unfortunately, given Appellant’s history, she would fall short of that standard.”
CSC’s determination did not mention Correction Law article 23-A, which relates to licensing and employment for persons previously convicted of a crime, nor did it evaluate petitioner under the factors enumerated in Correction Law § 753. On August 6, 2014, petitioner filed this proceeding.
Discussion
Administrative agencies have broad discretionary power when making determinations (see Matter of Ifrah v Utschig, 98 *400 NY2d 304 [2002]). Section 7803 of the CPLR provides for very limited judicial review of administrative agency actions. Generally, judicial deference is afforded to an agency’s determination as to an appropriate course of action to undertake in a particular matter so long as the agency’s determination is rational instead of arbitrary and capricious (see Jemrock Realty Co. LLC v Krugman, 64 AD3d 290, 300 [1st Dept 2009]; see also Matter of Gruber [New York City Dept. of Personnel— Sweeney], 89 NY2d 225, 231 [1996]).
Pursuant to Civil Service Law § 50 (4), DCAS has the discretion to disqualify civil service applicants from employment, in relevant part, where said applicants are found to have “been dismissed from a permanent position in the public service upon stated written charges of incompetency or misconduct” (see Civil Service Law § 50 [4] [e]). Applicants disqualified from civil service employment because of an agency’s character determination may challenge an agency’s findings on the grounds that such findings were made in bad faith or were arbitrary and capricious (see Matter of Stanziale v Executive Dept., Off. of Gen. Servs., 55 NY2d 735 [1981]; see also Matter of Carchietta v Department of Personnel of City of N.Y., 172 AD2d 304, 305 [1st Dept 1991]).
Article 23-A of the Correction Law, enacted in 1976, attempts to eliminate the effect of bias against ex-offenders by imposing an obligation on employers and public agencies to deal equitably with them by setting out a broad general rule that employers and public agencies cannot deny employment or a license to an applicant solely based on the applicant’s status as an ex-offender. But the statute recognizes exceptions either where there is a direct relationship between the criminal offense and the specific license or employment sought (Correction Law § 752 [1]), or where the license or employment would involve an unreasonable risk to persons or property (Correction Law §752 [2]). Where an applicant for employment has received a CRD, there is “a presumption of rehabilitation in regard to the offense or offenses specified therein” (Correction Law § 753 [2]). Section 753 of the Correction Law also highlights factors that a public agency or private employer may consider when evaluating its concerns with respect to an applicant for employment’s prior criminal history. Among those factors are the following:
“(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person [;]
*401 “(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities [;]
“(d) The time which has elapsed since the occurrence of the criminal offense or offenses [;]
“(e) The age of the person at the time of occurrence of the criminal offense or offenses [;]
“(f) The seriousness of the offense or offenses [;]
“(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct [;] [and]
“(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public” (Correction Law § 753 [1]).
Courts have found agencies’ decisions arbitrary and capricious where their findings fail to adequately consider the provisions of Correction Law article 23-A, including whether the petitioner’s criminal history has any direct relationship to the duties and responsibilities of a position sought, and whether the petitioner poses an unreasonable risk to public safety (see Matter of Bovich v LiMandri, 116 AD3d 489, 490 [1st Dept 2014] [denial of petitioner’s application to renew his stationary engineer license based upon his prior federal conviction for theft of funds was arbitrary, lacked rational basis, and violated article 23-A of Correction Law where it bore no direct relationship to his duties and posed no unreasonable risk to public safety, particularly in light of his being employed as a stationary engineer without incident for several years]; Matter of Dellaporte v New York City Dept. of Bldgs., 106 AD3d 446 [1st Dept 2013] [determination denying petitioner’s application based on federal conviction for theft of funds lacked a rational basis where it was unrelated to the duties of a stationary engineer, did not pose an unreasonable risk to public safety, and failed to afford the mandatory presumption of rehabilitation attendant to his certificate of relief from disabilities]).
Here, respondents state that they disqualified petitioner based on her June 6, 2000 termination from the NYPD, which itself was the result of what at the time amounted to pending criminal charges of selling a controlled substance. Notably, while petitioner’s arrest stemmed from what was alleged to be her direct involvement in a drug sale transaction, petitioner *402 ultimately entered a plea to the lesser offense of attempting to facilitate a drug sale. Petitioner was later awarded a CRD for this offense. Nevertheless, respondents’ motion papers state that “[t]he June 6, 2000, termination was based on ‘NYPD departmental charges’ of misconduct brought against petitioner due to her selling a controlled substance while working as a School Safety Officer” (see respondents’ mem of law in support of cross motion to dismiss at 10 [emphasis added]). Respondents irrationally imputed the higher offense of criminal sale of a controlled substance to petitioner even though the criminal court actually accepted her plea to the lesser offense of attempted criminal facilitation.
The court is aware of at least one other case where a similar situation arose (see Matter of Exum v New York City Health & Hosps. Corp., 37 Misc 3d 1218[A], 2012 NY Slip Op 52078[U] [Sup Ct, Kings County 2012]). In Matter of Exum, the petitioner was arrested for possessing a gravity knife in 1977, and marijuana in 2000 (2012 NY Slip Op 52078 [U], *3). Both arrests resulted in the petitioner entering a plea of guilt to disorderly conduct, a lesser offense than the weapon and marijuana possession charges that the petitioner initially faced (id.). As such the petitioner did not allocute to the crimes for which he was arrested, but instead allocuted to the lesser offense of disorderly conduct (id.). Both offenses were later sealed (id.). The petitioner was subsequently arrested on possession of marijuana charges five additional times between 1998 and 2006, and each time had those charges dismissed and sealed (id.).[3] Although the personnel review board insisted that the petitioner’s “several criminal arrests and convictions[4] . . . rendered him unfit for this position,” the court held, in part, that it was factually incorrect for the review board to base its findings on guilty pleas that were different from the offenses that petitioner was initially charged with (id. at *4-5, *9). Doing so, the court noted, was punitive in nature, and failed to comport with public policy (id. at *9). The court went on to conclude that since the review board had failed to specify how petitioner’s record related to his fitness and ability to perform the duties and responsibilities of a special officer, its decision was arbitrary and capricious as a matter of law (id.).
*403 In the instant case, both DCAS and CSC acted arbitrarily and capriciously and committed errors of law in a number of respects. Respondents assert that their decisions were not predicated upon petitioner’s conviction history — namely, her guilty plea — but rather on her prior termination from public employment. Respondents’ declarations to that effect are unpersuasive. The NYPD would not have terminated petitioner absent her criminal history, making it disingenuous for respondents to argue that DCAS and CSC’s decisions relied on her prior termination rather than her criminal history. The two are inexorably linked, making respondents’ attempts to differentiate them unavailing.
Next, respondents based their findings that petitioner was disqualified for a position as a DCAS special officer on grounds that were broader and more encompassing than the charge to which she pleaded guilty. Respondents allude to petitioner actually selling drugs rather than attempting to facilitate a sale of drugs. By doing so, they impute to petitioner an offense more serious than the adjudicated offense. In addition to pleading guilty to a lesser offense than the offense for which she was initially charged, petitioner was subsequently awarded a CRD. Since petitioner accepted a plea to the crime of attempted criminal facilitation rather than criminal sale of a controlled substance, the CRD that she later received was for that crime. Petitioner could not have received a CRD for the crime of criminal sale of a controlled substance because she never allocuted to that crime. Consequently, by measuring petitioner’s fitness for employment against the higher crime that she was charged with rather than the lower crime for which she received a CRD, respondents eviscerated the marrow of Correction Law § 753 (2) and its rehabilitative objectives. As such, respondents’ conduct here mirrors the irrational decision-making that was illustrated by the courts in the Matters of Bovich, Dellaporte, and Exum.
Moreover, by failing to address and consider the factors enumerated in Correction Law § 753, respondents overlooked the bearing, if any, that petitioner’s criminal history potentially could have had on her ability to perform the specific duties and responsibilities needed for the special officer position. As previously mentioned, the provisions of Correction Law § 753 were enacted to prevent the potential discriminatory practices of employers as against ex-offenders by positing that those employers could not presume a direct relationship between *404 one’s past conduct and future employment and the potential safety risk that one may pose as a result of past conduct. Instead, the employers had to evaluate the factors enumerated in Correction Law § 753 before reaching that conclusion. Those factors guide a rational evaluation of a person’s criminal history by, for instance, measuring how long ago and how serious one’s prior conviction was, a person’s age at the time, and any evidence of a person’s rehabilitation since then, among other factors.
Here, based on their respective decisions, it is clear that DCAS and CSC did not consider those factors enumerated in Correction Law § 753 when evaluating petitioner’s fitness for a DCAS special officer position. In fact, absent from the decisions issued by both DCAS and CSC is any consideration of how petitioner’s conviction history related to the duties and responsibilities of working as a DCAS special officer. Moreover, both respondents failed to consider the CRD that petitioner received in 2001. A CRD creates a presumption of rehabilitation that a prospective employer bears the burden of overcoming. Even though petitioner submitted her CRD to respondents on numerous occasions, they failed to mention it in their decisions, and offered no evaluation or discussion to rebut the presumption of petitioner’s rehabilitation. Furthermore, in its ruling affirming DCAS’s disqualification of petitioner, CSC referenced its concerns with the position petitioner seeks being an armed one without referencing the fact that petitioner submitted evidence that her application for a residential handgun license had been approved and subsequently renewed.
Without an evaluation of the factors enumerated in Correction Law § 753, respondents have failed to meet their burden of demonstrating that petitioner’s criminal history would pose a direct relationship to her duties as a DCAS special officer or that qualifying her as such would create an unreasonable risk to the public. Because respondents did not satisfy their statutory responsibilities under Correction Law article 23-A, and because they improperly based their decision on the original crime for which petitioner was charged, their determination must be annulled and remanded to respondent DCAS for a new determination based upon the factors enumerated in Correction Law § 753. Upon such an evaluation, respondents may or may not reach the same conclusion that was reached here. Whether or not respondents come to the same or a different conclusion is not before this court. However, absent such a *405 particularized evaluation, respondents’ determination remains arbitrary and capricious, and in error of law. Accordingly, it is hereby ordered and adjudged that the instant CPLR article 78 petition of Karen McMillan is granted to the extent that DCAS’s and CSC’s decisions to deny petitioner’s application for employment as a DCAS special officer are hereby annulled; and it is further ordered and adjudged that the instant matter is remanded to respondent DCAS for a new determination based upon the factors enumerated in Correction Law § 753 (1); and, the statutory presumption of rehabilitation with respect to a certificate of relief from disabilities, pursuant to Correction Law § 753 (2).

. Petitioner was originally charged in criminal court as well with a top count of criminal sale of a controlled substance in the second degree, which as codified in the Penal Law is defined as follows:
“A person is guilty of criminal sale of a controlled substance in the second degree when he knowingly and unlawfully sells . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and the preparations, compounds, mixtures or substances are an aggregate weight of one-half ounce or more” (Penal Law § 220.41 [1]).

. Penal Law § 115.00 (1) states that
"[a] person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid . . . to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony.”
Moreover, Penal Law § 110.00 defines an attempt as follows: “A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.”

. The petitioner subsequently was given a “Good Conduct Certificate” that indicated that he had no criminal record based upon his fingerprint submission for a search of his criminal history (id.).

4. “Convictions” here being analogous to an individual allocuting to and entering a guilty plea.