DiLorenzo v Windermere Owners LLC (2019 NY Slip Op 04779)





DiLorenzo v Windermere Owners LLC


2019 NY Slip Op 04779


Decided on June 13, 2019


Appellate Division, First Department


Kahn, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 13, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
John W. Sweeny, Jr.
Barbara R. Kapnick
Marcy L. Kahn
Anil C. SinghJJ.


110053/11 

[*1]Laura DiLorenzo, Plaintiff-Respondent,
v
Windermere Owners LLC, et al., Defendants-Appellants.



Defendants appeal from the judgment of the Supreme Court, New York County (Lucy Billings, J.), entered October 26, 2017, in favor of plaintiff against them, and from the order of the same court and Justice, entered October 18, 2017, which, following a nonjury trial, directed entry of judgment in favor of plaintiff.



Rosenberg, Feldman, Smith, LLP, New York (Richard Bruce Feldman of counsel), and Cullen & Associates, P.C., New York (Kevin D. Cullen of counsel), for appellants.
Marc Bogatin, New York, for respondent.



KAHN, J.


On this appeal, we are asked to determine whether the record sufficiently demonstrates that defendants Windemere Chateau, Inc. (Chateau), the original owner of a residential building located at 666 West End Avenue in Manhattan, and Windermere Owners, LLC (Owners), the successor owner of the building, expended an amount in qualified individual apartment improvements (IAIs) to apartment 4K in that building sufficient to render that apartment exempt from rent stabilization. Should we answer that question in the negative and conclude that defendants imposed a rent overcharge on the apartment's tenant, plaintiff Laura DiLorenzo, we are then asked to determine whether there was evidence supporting a finding of willfulness on defendants' part in doing so, warranting an award of treble damages to plaintiff. Upon our de novo review of the record, we conclude that defendants have substantiated their claims that they have made sufficient expenditures for IAIs performed in the apartment to warrant an exemption from rent stabilization and did not impose a rent overcharge. Thus, we do not reach the issue of [*2]whether defendants willfully imposed a rent overcharge.
I. FACTUAL BACKGROUND
Beginning in 1984, Chateau registered apartment 4K with the New York State Division of Housing and Community Renewal (DHCR) as rent stabilized. The apartment continued to be registered as rent stabilized until June 18, 2009. Prior to that date, the registered monthly rent had been $1,450.70.
According to defendants, sometime in 2009, renovations were made to apartment 4K, including general contracting, plumbing and electrical work.
On September 25, 2009, plaintiff and then-building owner Chateau entered into a one-year lease commencing on October 1, 2009, for apartment 4K. That lease provided for a monthly rent of $2,300.00, plus a monthly supplement for air conditioning.
On July 1, 2010, Chateau filed a registration statement with the DHCR declaring that apartment 4K was permanently exempt from rent stabilization due to high rent vacancy.
In October 2010, the lease of apartment 4K was renewed for an additional year for a monthly rent of $2,415.00, plus the supplement.
On November 18, 2010, Chateau sold the building to Owners and assigned the renewed lease of apartment 4K to Owners as part of its purchase of the building.
On August 31, 2011, plaintiff filed a complaint in which she alleged that she was overcharged, in that the lawful stabilized rent for apartment 4K was $1,450.70, and that the apartment was improperly removed from rent stabilization. She further alleged that defendants' rent overcharge was willful, as demonstrated by defendants' July 2010 DHCR filing, which, according to plaintiff, was false and fraudulent.
II. THE TRIAL
A nonjury trial commenced on January 19, 2016. At trial, the parties stipulated that defendants would have to have expended $21,972.00 on in apartment 4K in order to be entitled to the rent increase they charged plaintiff. Defendants claimed that in 2009 they spent $82,015.27 in IAIs on the apartment, including $60,000.00 in renovations performed by general contractor HFM Company, Inc. (HFM), $16,365.27 in plumbing work performed by Mike Lorenz Corp. (Lorenz) and $5,650.00 in electrical work performed by Contractors Electrical Service, Inc. (CES).
By decision and order entered October 18, 2017, the trial court determined that defendants failed to substantiate general contractor HFM's invoice for $60,000.00 for work it performed in apartment 4K. The court found that there was no trial testimony from any witness, including defense witnesses Simon Baigelman, the property manager and part owner of the building in 2009, and Howard Molen, principal of HFM, with personal knowledge that the work described in the invoice was actually completed as claimed, and that neither Baigelman, who had no recollection of the work set forth in the invoice, nor Molen, who had never visited the work site, had performed a personal inspection of the work performed at the apartment. The trial court also found that a check dated December 16, 2009 and drawn on Chateau's account for $63,097.81, payable to HFM, was insufficient to substantiate defendants' claims, in that there was no indication on the check itself that it was in payment for the work set forth in the invoice and the check was for an amount greater than $60,000.00. The court also determined that defendants failed to show that the IAIs they claimed were performed in apartment 4K in 2009 were not duplicative of IAIs performed in the same apartment in 1995 and 1998, or that the earlier work had outlasted its useful life.
The trial court also determined that defendants had failed to substantiate their claim that plumbing work had been performed by Lorenz in apartment 4K in 2009. The court, having previously declined to admit into evidence two Lorenz invoices proffered by defendants, including a Lorenz invoice dated September 29, 2009 for kitchen and bathroom renovation in [*3]apartment 4K, found that defendants failed to offer any invoices from Lorenz for plumbing work in the apartment. The court found that a check dated October 8, 2009 and drawn on Chateau's account in the amount of $16,365.27, payable to Lorenz, did not substantiate defendants' claim, in that the check itself did not indicate that it was in payment for work done in apartment 4K. The court also found that a certificate of capital improvement dated June 22, 2009, describing plumbing work performed by Lorenz in apartment 4K, did not substantiate the claim in that it did not list the costs or final price for the work described. The court further observed that Baigelman had testified that he could not recall what plumbing work, if any, he had requisitioned from Lorenz for apartment 4K and did not know if the check for $16,365.27 was in payment solely for work performed in that apartment. The court also noted that defense witness Annette Lorenz, the widow of the original owner of Lorenz who worked at the company in 2009, but was not a licensed plumber, had testified that she had no personal knowledge of Lorenz's plumbing work in the apartment and had never visited the work site. The trial court, however, made no mention of the fact that Annette Lorenz authenticated the two Lorenz invoices for plumbing work.
Plaintiff introduced into evidence at trial a series of photographs she had taken of the apartment in 2016. These photographs clearly depict what appears to be new flooring, new tiling and a new bathtub and sink in the bathroom, as well as new appliances and cabinets in the kitchen. The trial court's decision made no mention of the photographs.
The sole IAI claim found by the trial court to be substantiated was defendants' claim that $5,650.00 in electrical work had been performed in apartment 4K by CES. Based upon that claim only, the court concluded that defendants were entitled to a monthly rent increase of 1/40th of the cost of the electrical work, or $141.25. Adding this figure to the base rent, which, according to the court, was $1,450.00, the court found that the post-IAI legal rent was $1,591.25, which was below the $2,000.00 threshold required for lawful removal of the apartment from rent stabilization. The trial court found that plaintiff was entitled to a rent stabilized lease and damages for the overcharges paid in the amount of $77,700.00.
With regard to plaintiff's claim for treble damages, the trial court found that defendants failed to rebut the presumption that their overcharges were willful. Accordingly, the trial court awarded plaintiff treble damages of $233,100.00, along with reasonable attorneys' fees.
III. DISCUSSION
On appeal, defendants' principal argument is that the record supports a finding that IAIs were performed in apartment 4K in 2009 and that the apartment was properly declared exempt from rent stabilization. Plaintiff opposes, arguing that there is no reason to disturb the trial court's finding, which, according to plaintiff, rested in significant part on credibility determinations.
A. Standard of Review
With regard to the appropriate scope of this Court's review on this appeal, it is well settled that as to the review of a judgment following a nonjury trial, this Court's "authority is as broad as that of the trial court" and that "as to a bench trial [the Appellate Division] may render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983] [internal quotation marks omitted]; Green v William Penn Life Ins. Co. of N.Y., 74 AD3d 570, 571 [1st Dept 2010] [Saxe, J., concurring]). Put otherwise, in this case the appropriate standard of review is a de novo assessment of whether the weight of the evidence supports the determination, as set forth in Northern Westchester Professional Park Assoc. (see Green, 74 AD3d at 573 [Saxe, J., concurring]).
The dissent relies on Thoresen v Penthouse Intl. (80 NY2d 490 [1992]), and plaintiff relies on Bubba's Bagels of Wesley Hills, Inc. v Bergstol (18 AD3d 411, 412 [2d Dept 2005]), in support of the view that this Court should not disturb the trial court's findings of fact. Reliance [*4]on these cases is misplaced, however. The Thoresen decision instructs that a trial court's determination should not be disturbed if that determination was based on a fair interpretation of the evidence, "especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (80 NY2d at 495 [internal quotation marks omitted]; see also Bubba's Bagels, 18 AD3d 412 [giving "appropriate regard" to trial judge's ability to assess credibility of witnesses, trial court's decision "could not have been reached on any fair interpretation of the evidence"]; Cohen v Akabas & Cohen (71 AD3d 419, 420 [1st Dept 2010] [citing Thoresen in applying "fair interpretation of the evidence" standard to uphold decision of special referee where findings of fact "largely rest upon considerations relating to the credibility of witnesses"]). As explained in Green, however,
"Limiting appellate review to the fair interpretation of the evidence approach may be appropriate where the findings rest predominantly on credibility determinations, because such determinations are entitled to substantial deference. However, it is not appropriate where the trial court's findings rest largely on inferences drawn from established facts and verifiable assertions. In that case, there is no valid rationale for precluding the appellate court from finding facts, as indicated in Northern Westchester Professional Park Assoc."
(Green, 74 AD3d at 572 [Saxe, J., concurring]).
In this case, there is no statement in the trial court's decision and order to the effect that the court found any of the defendants' witnesses less than credible. Rather, the trial court found the evidence to be legally insufficient, based on defendants' witnesses' lack of recall or lack of personal knowledge, not upon the witnesses' credibility. The evidentiary facts were undisputed, and the controversy was confined to what legal conclusions could be drawn from those facts. Thus, this is not a "close case" where there is any "valid rationale for precluding [this Court] from finding facts" based in part upon inferences drawn from facts established in the record and verifiable assertions (id.; see Northern Westchester)[FN1]. Here, in contrast to Thoresen, given the absence of any mention of the credibility of the witnesses from the trial court determination, we are not limited to deciding whether that determination was based on a fair interpretation of the evidence. Indeed, in Thoresen, the Court "neither discussed nor mentioned the Appellate Division's well established broad authority to make its own findings of fact, as recognized in Northern Westchester Park Assoc. (60 NY2d at 499)" (Green, 74 AD3d at 572 [Saxe, J., concurring]).
B. Standard of Proof
In a rent overcharge action, the defendant building owner has the "burden of proving the cost of the renovations made to the apartment to justify the rent it charged plaintiff" (Bradbury v 342 W. 30th St. Corp., 84 AD3d 681, 683 [1st Dept 2011]). To meet that burden, the owner must present "documentary support therefor, [including] . . . all relevant invoices, bills, cancelled checks and/or other material" (Matter of 985 Fifth Ave. v State Div. of Hous. & Community Renewal, 171 AD2d 572, 574-575 [1st Dept 1991], lv denied 78 NY2d 861 [1991]; see DHCR Policy Statement 90-10 [June 26, 1990] ["Any claimed . . . individual apartment improvement cost must be supported by adequate documentation which should include at least one of the following: 1) Cancelled check(s) contemporaneous with the completion of the work; 2) Invoice receipt marked paid in full contemporaneous with the completion of the work; 3) Signed contract agreement; 4) Contractor's affidavit indicating that the installation was completed and paid in full."] [90-10]).[FN2]
C. Analysis
1. IAIs
Here, applying the Northern Westchester and 90-10 standards, the invoices and checks proffered by defendants at trial, when read together, and in conjunction with the testimony of the defense witnesses, more than sufficiently demonstrate that the costs of the 2009 IAIs well exceeded the $21,972.00 threshold needed for exemption of the apartment from rent stabilization. Specifically, with regard to the general contracting work performed by HFM in apartment 4K in 2009, defendants have presented documentary proof in the form of the HFM invoice, dated October 14, 2009, for $60,000.00 and the front and back of a cancelled check dated December 16, 2009 drawn on Chateau's account for $63,097.81 payable to HFM. The invoice sets forth in detail the work performed in "Suite #4K," including "installation of a new mica kitchen" and "construction of a new bathroom" with new "floor tiles."
The HFM invoice and Chateau check were both authenticated by the trial testimony of Molen and Baigelman. At trial, Molen laid a CPLR 4518 business record foundation for the [*5]invoice, and it was admitted into evidence. Molen further testified that HFM prepared its invoices contemporaneously with the performance of its services, and that the $63,097.81 check paid for the $60,000.00 invoice as well as other HFM invoices. This testimony is consistent with that of Baigelman, who testified that routinely, after work was performed by HFM, it sent him an invoice, which he reviewed and paid. He further testified that it was his common practice to pay all outstanding invoices in a single check. Further, Baigelman testified that he signed the $63,097.81 check on behalf of Chateau and that he believed that the HFM invoice was paid in full. Thus, the invoice and check have been authenticated by Molen's and Baigelman's testimony. Moreover, given Molen's testimony that he prepared invoices contemporaneously with the performance of services, as well as the temporal proximity of the invoice and the check, which are respectively dated in October and December of 2009, it is reasonable to infer that the HFM invoice in question here was prepared contemporaneously with the completion of HFM's work in apartment 4K. Thus, the invoice and check, as authenticated by the testimony of Molen and Baigelman, whose credibility was not discounted by the trial court, satisfy the 90-10 requirements for substantiation of this IAI claim. Indeed, the HFM IAIs, in themselves, justify defendants' 2009 IAI rent increases.
The dissent's view that the $63,097.81 check does not substantiate that HFM performed the work in question because that check does not specifically reference apartment 4K and is in an amount greater than the HFM invoice takes into account neither Baigelman's testimony that it was his common practice to pay all outstanding invoices in a single check, nor the temporal proximity of the invoice to the payment.
Significantly, photographs of apartment 4K taken by plaintiff in January 2016 and admitted into evidence at trial depict what appears to be new flooring, new tiling and a new bathtub and sink in the bathroom, as well as new appliances and cabinets in the kitchen. As plaintiff testified, these photographs fairly and accurately reflected the condition of the apartment when plaintiff moved into it in 2009, and therefore corroborate the new kitchen and bathroom installation and other renovation work described in the invoice, as well as Baigelman's testimony that the work performed probably involved a gut renovation of the kitchen and bathroom in apartment 4K. Thus, while not dispositive in themselves, the photographs, taken together with the documentary and testimonial evidence and all surrounding circumstances, establish HFM's work on the apartment and those IAIs.
The dissent completely discounts the photographs as being of no evidentiary value because they were taken in 2016 and therefore do not depict renovations performed in the kitchen and bathroom contemporaneously with the time they were performed. The record reflects, however, that the photographs were taken by plaintiff herself in apartment 4K after the 2009 renovations were performed, and, as plaintiff herself testified, fairly and accurately reflected the condition of the apartment at the time she moved in in 2009. Moreover, the photographs depict the kitchen, bathroom and flooring of the apartment as in a condition consistent with the relatively recent performance of the kinds of renovations described in the invoices that are included in the record. Thus, the photographs corroborate the 2009 renovation work described in the invoices, as well as Baigelman's and Molen's testimony. For purposes of this de novo review, it is sufficient that the record reflects that plaintiff took them in apartment 4K after the work in question was completed, and it is of no moment that they were not shown to defendants' witnesses at trial.
Furthermore, Baigelman testified that his routine practice was to walk through an apartment after work was completed prior to paying an invoice, and that although he had no specific recollection of doing so in apartment 4K, he would not have paid an invoice for $60,000.00 without conducting a prior inspection to make certain that the work had been done. Thus, the weight of the evidence, including the invoice and check, as corroborated by the [*6]photographs of the apartment and the unchallenged testimony of Baigelman and Molen, amply substantiates defendants' claim that they paid $60,000.00 in general contracting expenses as set forth in the HFM invoice.
The dissent characterizes Baigelman's testimony as built on a series of assumptions based upon what he would do in the regular course of business, such as receiving an invoice for work performed in the apartment and performing an inspection of the apartment upon completion of the work. The dissent also refers to inconsistencies in Baigelman's testimony and conflicting documentary evidence, without providing any further explanation. Rather than considering Baigelman's testimony in conjunction with the testimony of Molen and Lorenz and the record documentary evidence and drawing reasonable inferences from such evidence, the dissent discounts much of Baigelman's testimony on the ground that he could not recall specific aspects of his dealings with the contractors in regard to their work in apartment 4K.
In maintaining that defendants failed to submit documentation demonstrating that the IAIs were actually performed, however, the dissent fails to take into account that here, where defendants have submitted both invoices and checks, corroborated by Baigelman's and Molen's testimony, they have more than sufficiently substantiated their IAI claims in accordance with the 90-10 evidentiary standards and our Court's recent precedent (see Stulz v 305 Riverside Corp., 150 AD3d 558, 558-559 [1st Dept 2017], lv denied 30 NY3d 909 [2018] ["Defendant provided a construction contract, cancelled checks, and the testimony of the contractor to substantiate the IAIs"]; Matter of Kolinsky v Towns, 137 AD3d 496, 497 [1st Dept 2016] [DHCR finding that IAI claims substantiated by invoice, checks and owner's worksheet entitled to judicial deference]).
This case stands in stark contrast to the cases cited in the dissent, in which insufficient or no documentary proof was offered (see Altschuler v Jobman 478/480, LLC., 135 AD3d 439, 440 [1st Dept 2016], lv dismissed 28 NY3d 945 [2016], lv denied 29 NY3d 903 [2017] [lack of documentation such as bills from contractor or records of payments]; 72A Realty Assoc. v Lucas, 101 AD3d 401, 402-403 [1st Dept 2012] [absence of any record evidence in support of landlord's renovation claim, such as bills from contractor or records of payment for renovations]; Matter of 985 Fifth Ave. v State Div. of Hous. & Community Renewal, 171 AD2d at 573-574 [landlord failed to provide invoices for stove, refrigerator and dishwasher and conceded that it had not paid for them; invoice for air conditioners proffered by landlord did not match serial numbers of those installed in apartment]). Moreover, this case is entirely different from Smoke v Windermere Owners LLC (130 AD3d 522 [1st Dept 2015]), and Chekowsky v Windermere Owners (114 AD3d 541 [1st Dept 2014]), both involving this same building, in that in both of those cases, the defendants' proffer was entirely devoid of adequate documentation in support of their IAI claims.
With respect to the plumbing IAIs, defendants submitted a copy of a check dated October 8, 2009, drawn on the Chateau
account and made payable to Lorenz in the amount of $16,365.27,
and a certificate of capital improvement stating that "kitchen
and bathroom renovation" had been performed in "Apt. 4K,"
including "new waste, vent & water lines" and "new shower body,
bathtub, toilet, basin & faucets." The record also includes two
invoices from Lorenz, one dated September 29, 2009 in the amount
of $13,251.95 for "Apt. 4K Kitchen & Bathroom - renovation" and one dated July 28, 2009, in the amount of $3,113.32 for "replace[ment of] hot and cold water risers and valves in "Apt. 4K - 5K."
The trial court's decision erroneously excluded these two invoices from its consideration, however. Although the record reflects that plaintiff's counsel objected to their admission on the [*7]ground that he had not seen these invoices until their production in court by Annette Lorenz immediately prior to her testimony at trial on January 20, 2016, the record also indicates that copies of both invoices were attached as exhibits to defendants' motion for summary judgment dismissal dated August 7, 2012. This Court has the authority, on de novo review, to reconsider the evidentiary rulings of the trial court (see Green, 74 AD3d at 578-579 [Saxe, J., concurring] [ruling that expert testimony admitted by trial court should have been excluded]). Exercising that authority, we find that these two invoices should have been admitted into evidence, and we will now consider them on this de novo review.
Baigelman testified that the amount paid for plumbing work in apartment 4K was $13,251.95 and that the $16,365.27 check was in payment for both that invoice and the invoice for $3,113.32. Furthermore, Baigelman testified that the $16,365.27 check was probably in payment for work related to the gut renovation of the kitchen and bathroom in apartment 4K noted previously. This testimony corroborates the documents proffered by defendants, including the two invoices referring to apartment 4K, the $16,365.27 check payable to Lorenz and the certificate of capital improvement, especially when the temporal proximity of these documents is considered. Moreover, Annette Lorenz authenticated the certificate of capital improvement by testifying that she recognized her secretary's handwriting and the signature of the licensed plumber for Lorenz on the document. Thus, the weight of the evidence supports the conclusion that defendants paid at least $13,251.95 for plumbing work performed in apartment 4K.
It is undisputed that defendants substantiated their claim that $5,650 in electrical work was performed by CES in the living room, bedroom, bathroom and kitchen in apartment 4K in 2009.
Added together, all three sets of charges, for general contracting, plumbing and electrical work, not including the $3,113.32 for plumbing work in both apartment 4K and apartment 5K, totals $78,901.95, which arithmetically is well in excess of the $21,972.00 stipulated threshold for defendants to have lawfully declared apartment 4K exempt from rent stabilization and to have legitimately charged plaintiff the monthly rent she paid in 2009 and thereafter, as the dissent concedes. Moreover, all three contractors' invoices refer to kitchen and bathroom work performed in apartment 4K in 2009. Further, as already stated, the invoices and checks related to general contracting and plumbing work in the apartment were corroborated by the testimony of Baigelman, Molen and Annette Lorenz, and supported by the photographs of the recently renovated rooms in the apartment.
In sum, reading all three sets of invoices and checks together, in terms of the amounts spent on IAIs in apartment 4K in 2009 and the invoices' common references to bathroom and kitchen renovation in the apartment, as corroborated by the testimony of the defense witnesses, and the timing of the invoices, payments, and renovated condition of the apartment as of 2009 as shown by plaintiff's photographs, the weight of the evidence overwhelmingly supports the conclusion that defendants lawfully declared apartment 4K exempt from rent stabilization and therefore did not impose a rent overcharge on plaintiff.
Although the trial court found the testimony of Baigelman, Molen and Annette Lorenz insufficient to substantiate defendants' claims on the ground that all of those witnesses lacked personal knowledge that the 2009 IAIs in apartment 4K were performed, there is no requirement of such proof [FN3]. The cases cited by the trial court do not impose a personal knowledge [*8]requirement, however. Rather, consistent with 90-10, they require such documentary proof as " bills from a contractor . . . or records of payments for the [claimed improvements]'" (see Altschuler v Jobman 478/480, LLC, 135 AD3d at 440, quoting 72A Realty Assoc. v Lucas, 101 AD3d at 402). Here, defendants have supplied copies of invoices from three contractors describing IAIs performed in apartment 4K and copies of the front and back of cancelled checks in payment of those invoices, and have provided supporting testimony, and have therefore met both the Altschuler and 90-10 requirements for substantiation of their claims.
With respect to the circumstances under which a landlord is entitled to impose an IAI rent increase, the Rent Stabilization Code at 9 NYCRR 2522.4(a)(1), provides, in pertinent part:
"An owner is entitled to a rent increase where there has been . . . installation of new equipment or improvements, or new furniture or furnishings, provided in or to the tenant's housing accommodation, on written tenant consent to the rent increase. In the case of vacant housing accommodations, tenant consent shall not be required."
Here, the IAIs in question were performed in 2009, when the apartment was vacant and prior to plaintiff's moving into the apartment later in 2009. Accordingly, defendants need not have, and, indeed, could not have, obtained her consent for her IAI rent increase.
2. Duplication/Useful Life
Plaintiff's argument that the 2009 IAIs do not qualify apartment 4K for exemption from rent stabilization because they are duplicative of, or were made during the useful life of, IAIs made to apartment 4K in 1995 and 1998 is unavailing on this record. In her complaint, plaintiff made no mention of the IAIs she now asserts were performed in 1995 and 1998. Moreover, plaintiff failed to amend her complaint to include her factual averments and legal claims in this regard or to make a motion before the trial court based upon them. Because this argument raises an issue that was "not asserted in the complaint or in [the one motion included in the record that was made] before the motion court, [it] is not properly before us in the context of this appeal" (see Safka Holdings, LLC v 220 W. 57th St. L.P., 142 AD3d 865, 866 [1st Dept 2016]).
The dissent cites no pertinent authority in support of its differing view that plaintiff had no obligation to plead that the 2009 IAIs were performed during the useful life of the 1995 and 1998 IAIs, and that defendants were obligated to raise the useful life issue as an affirmative defense. Scholastic Inc. v Pace Plumbing Corp. (129 AD3d 75 [1st Dept 2015]), cited in the dissent, pertains to a defendant's burden to plead a limitations period as an affirmative defense but has no bearing on whether defendants have the burden to plead and prove, as an affirmative defense, that the 2009 IAIs were not duplicative of, or not performed during the useful life of, the 1995 and 1998 IAIs in this case (see id. at 86). Moreover, in Scholastic, this Court reasoned that the defendant should plead the limitations period as an affirmative defense because the plaintiff [*9]was entitled to have notice of the defense and conduct discovery accordingly, explaining that "prejudice is the critical concern" (id.). Here, this Court is conducting a de novo review of the evidentiary facts before the trial court, not a review of a state agency determination, as in Matter of 985 Fifth Ave. v State Division of Hous. & Community Renewal (171 AD2d at 572). The record indicates that plaintiff did not raise the useful life issue until the filing of her pretrial memorandum of law on December 9, 2015, approximately 3½ years after filing her complaint on August 31, 2011 and only one month prior to the commencement of the trial. Thus, in this case, it was defendants, not plaintiff, who were prejudiced by plaintiff's delay in raising this issue, although she could have done so by amending her complaint.
In any event, defendants were not required to include in their DHCR registration forms descriptions of any IAIs performed in 1995, 1998 or 2009 or to adhere to a useful life schedule in performing IAIs (see 9 NYCRR 2522.4[a][1] [no provision for DHCR application, review or approval process for IAIs]; cf. 9 NYCRR 2522.4[a][2][d], [e] [providing for DHCR application and review process and useful life schedule for "major capital improvements"]; Matter of Rockaway One Co., LLC v Wiggins, 35 AD3d 36, 42 [2d Dept 2006] [contrasting subdivisions 1 and 2 of 9 NYCRR 2522.4[a]).[FN4]
In her post-argument supplemental submission, plaintiff relies on the recent decision in Rossman v Windermere Owners, LLC (Sup Ct, NY County, Jan. 4, 2019, Nervo, J., index No. 108350/11), where Supreme Court held that the defendants failed to substantiate the invoices reflecting claimed IAIs performed by the same contractors in a different apartment in the same building as in the instant case. Rossman is materially distinguishable from the instant case, however.
At the outset, the court in Rossman did not have before it the types of evidence presented in this case, including cancelled checks in payment of the related invoices and photographs of the recent renovations to the apartment corresponding to the work described in the invoices. Additionally, evidence in Rossman undermined the defendants' case, including discrepancies in Lorenz's plumbing invoices and expert testimony refuting the installation of new oak flooring and moldings. There was no such contradictory evidence in this case, however.
Furthermore, it makes no sense that defendants would incur more than $78,000.00 in contracting expenses if all that was needed was $21,972.00 in IAIs in order to qualify apartment 4K for exemption from rent stabilization, unless the expenses were necessary to address an emergency situation, such as water damage to the apartment. This scenario is consistent with Baigelman's testimony that there was extensive water damage to some of the apartments in the building prior to the 2009 renovations of those apartments, as well as Molen's testimony that some of the apartments in the building had to undergo a gut renovation, although he could not recall if apartment 4K was one of those apartments.
3. Treble Damages
As we find that there was no rent overcharge in this case, we have no occasion to address the issue of whether plaintiff is entitled to treble damages due to defendants' willfulness in [*10]overcharging plaintiff.
Accordingly, the judgment of the Supreme Court, New York County (Lucy Billings, J.), entered October 26, 2017, in favor of plaintiff against defendants, should be reversed, on the law and the facts, without costs, the judgment vacated, and the complaint dismissed. The Clerk is directed to enter judgment accordingly. The appeal from the order of the same court and Justice, entered October 18, 2017, which, following a nonjury trial, directed entry of judgment in favor of plaintiff, should be dismissed, without costs, as subsumed in the appeal from the judgment.
All concur except Kapnick and Singh, JJ. who dissent in an Opinion by Singh, J.




SINGH, J. (dissenting)


I respectfully dissent for the following reasons. First, the majority usurps Supreme Court's authority to make factual findings. Second, contrary to our caselaw, in essence the majority has improperly placed the burden of proof on the tenant to establish that the apartment was illegally deregulated based on alleged individual apartment improvements made by the landlord. Accordingly, I would affirm Supreme Court's fact-intensive inquiry.
While we may review factual findings of the trial court, our power is not limitless. Where, as here, findings of fact are based on the credibility of witnesses, the Court of Appeals instructs as follows:
"[T]he decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses"
(Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992] [internal quotation marks omitted]; see Horsford v Bacott, 32 AD3d 310, 312 [1st Dept 2006] ["Although this Court enjoys broad powers to review the facts, due regard must be given to the decision of the Trial Judge who was in a position to assess the evidence and the credibility of the witnesses"]; see also D.S. 53-16-F Assoc. v Groff Studios Corp., 168 AD3d 611 [1st Dept 2019] [internal quotation marks omitted]; PSKW, LLC v McKesson Specialty Arizona, Inc., 159 AD3d 559 [1st Dept 2018]; Rubin v George, 136 AD3d 447, 448 [1st Dept 2016]; Legrand v Ganich, 122 AD3d 411 [1st Dept 2014]).
In 1984, 666 West End Avenue (the Windermere) in Manhattan was owned and registered by defendant Chateau with New York State Division of Housing and Community Renewal (DHCR). Apartment 4K (Apt 4K) was registered as rent stabilized until June 18, 2009, with a registered rent of $1,450.70. In 2009, defendants removed Apt 4K from rent stabilization.
Plaintiff Laura DiLorenzo entered into a one-year lease commencing on October 1, 2009 for Apt 4K at $2,300 per month. On July 1, 2010, Chateau filed a registration statement with DHCR asserting that Apt 4K was permanently exempt from rent stabilization due to high rent vacancy. In October 2010, Chateau renewed plaintiff's lease for an additional year, increasing plaintiff's rent to $2,415 per month. The lease was set to expire on September 30, 2011.
On November 18, 2010, the Windermere was sold to defendant Owners. Thereafter, on August 31, 2011, plaintiff commenced this action, alleging that the lawful stabilized rent for the Apt 4K was $1,450.70. Plaintiff asserted she was overcharged by defendants who fraudulently represented that the apartment was not subject to rent stabilization. Plaintiff further averred that defendants' DHCR decontrol filing was fraudulent in that the legal rent did not exceed the $2,000 threshold for destabilization. In addition, she contended that defendants violated Administrative Code of the City of NY § 26-504.2, by not providing plaintiff with certified [*11]written notice of decontrol, despite her demand. Plaintiff sought a judgment against defendants for rent overcharges, treble damages, a declaratory judgment that she was a rent stabilized tenant and an injunction barring defendants from evicting her.
Defendants answered, stating, inter alia, that the premises qualified for permanent deregulation.
A nonjury trial was held in January 2016. The parties stipulated that defendants would have had to expend $21,972 on individual apartment improvements on Apt 4K in order to be entitled to the rent increase they charged plaintiff. Defendants claimed that in 2009 they spent $82,015.27 in improvements on Apt 4K.
In support of defendants' claims, Simon Baigelman (Baigelman), the building manager between 1986 and 2011 and part owner of Chateau, testified that he oversaw all aspects of management including rentals, leasing, rent collection, and facility maintenance. The procedure for making repairs or improvements to apartments was for him to contact contractors to look at the proposed work, estimate the cost, and reach an agreement on the project.
Baigelman testified that he had hired HFM Company, Inc. (HFM) as the contractor. After work was performed, HFM would send Baigelman an invoice. Baigelman was shown a $60,000 invoice from HFM, dated October 14, 2009. The invoice stated that the "job location" was "Suite #4K." The invoice reflected that the flooring was ripped out and new subfloors, wood flooring, trim, door frames, a new kitchen, a new slab and tiles were installed in the bathroom.
Baigelman stated that he assumed that he had received the invoice in the ordinary course of business. However, he did not remember if it was filed with defendants' records contemporaneously to receipt of the invoice. He also assumed that the invoice was for work performed in Apt 4K but could not confirm that the work had actually been done. The court sustained plaintiff's objection to the admission of the invoice as a business record on the ground it lacked a proper foundation. The court noted that Baigelman was testifying based entirely on the invoice in front of him, which was not in evidence. Baigelman stated that he did not recall the specific apartment but "assumed" that everything was ripped out back to the original and redone. He also testified that based on the review of the bill — which was not in evidence — he "assumed" there was a gut renovation of the kitchen and bathroom.
Baigelman also testified that it was "highly unlikely" that a gut renovation had also been done to Apt 4K earlier in 1995 or 1998, but he did not remember. He also could not "recall" whether or not he paid the invoice in front of him.
Defendants failed to produce DHCR forms that would have supported such improvements for the relevant years: 1995, 1998, and 2009. Defendants also failed to adduce any testimony from Baigelman verifying that plaintiff's photographs corroborated the 2009 improvements.
Baigelman identified a check signed by him on behalf of Chateau for $63,097.81 payable to HFM. There was no apartment number nor was there an invoice number on the check. The amount on the check issued by defendants did not match the amount on the invoice. Nonetheless, Baigelman testified that he believed that the check was for work in Apt 4K and other work that was possibly done at the Windermere.
Baigelman stated that after work was performed in the building, he walked through apartments with the job supervisor to make sure everything was completed prior to paying an invoice. He explained that he would not have paid the invoice for $60,000 without an inspection because it was for a large sum of money.
However, in response to a question as to whether he approved the work reflected in the HFM invoice, Baigelman replied that he did not remember the specifics because it was a long time ago, but he "assumed" that he had inspected the apartment, reviewed HFM's work, and subsequently paid the invoice. He stated that he "ha[d] to believe" that the invoice was paid in [*12]full. The check for $63,097.81 was admitted into evidence.
Howard Molen (Molen), HFM's owner, testified that he received calls from Baigelman in 2009 to do work in the Windermere. He identified his invoice and testified that HFM performed the work reflected in the invoice. It was the business of HFM to prepare invoices contemporaneously with the services. He was not on the job site for the work reflected in the invoice, but he prepared the invoice based on what was told to him by his employees, who had a business duty to report the information to him accurately. The HFM invoice seeking the sum of $60,000 was admitted into evidence as a business record.
Molen stated that the invoice did not break down the price of individual items of the job, and there was no way to determine the cost of each component. Molen never saw the construction and relied on information provided to him by his workers. He also did not conduct a final inspection of the job site. Again, defendants failed to have Molen verify that plaintiff's photographs corroborated the 2009 improvements HFM allegedly performed.
Molen stated that the check for $63,097.81 satisfied the invoice and additional outstanding invoices. The other alleged outstanding invoices were not introduced into evidence.
On cross-examination, Molen testified that in 1999 he and HFM pled guilty to a commercial bribery scheme where he kicked back 10% of his fees to employees of a management company in order to obtain work.
Molen no longer had invoices for the materials he used in the job because of a flood in his office. He did not file an insurance claim for the damage to his office.
The court also heard testimony regarding the alleged plumbing work done in Apt 4K. Baigelman testified that the work was performed by Mike Lorenz Corp. (Lorenz), the plumbing contractor used by the building.
While Baigelman identified his handwriting on a Lorenz invoice, he did not recall the nature of the work reflected in the invoice. He stated that it appeared to be a renovation of the bathroom and kitchen in Apt 4K. He assumed he paid the invoice. Baigelman also identified a check payable to Lorenz from Chateau but did not know if the check was for the work reflected in the invoice. He stated that the check was dated October 2009, and the invoice was dated a month earlier. He paid bills in a timely manner but had no way to verify whether the invoice and the check were related. He noted that the check was for more than the invoice and stated that invoices were sometimes grouped for payment. Baigelman testified that the check "[m]ost likely . . . could have been" for the Lorenz invoice but he needed to see the other invoices that corresponded with the balance on the check. When Baigelman was shown a document to refresh his recollection, he stated that the check could have been for payment of the invoice for work in Apt 4K. However, the check did not reflect the apartment number where the work was done or an invoice number connecting the invoice to the check.
Annette Lorenz, owner of Lorenz, did not work for the company during the relevant time period (1995 — 2010), but worked there during an earlier time period. After her late husband, a master plumber, died in 2005, she began to play a greater role in the business to ensure it would continue. A secretary was involved in billing and reported to Annette until the secretary passed away in 2009. She recognized the secretary's handwriting and the signature of the master plumber on a certificate of capital improvement form that was prepared when plumbing work was completed at the Windermere. However, she had no personal knowledge of the work reflected on the certificate.
Annette testified that the Lorenz invoice dated September 29, 2009 for $13,251.90 was prepared in the ordinary course of business and that it was part of the business to prepare such records. She testified that a check for $16,365.27 payable to Lorenz may have been payment of more than one invoice. A check dated October 8, 2009 for $16,365.27 payable to Lorenz was admitted into evidence.
The Lorenz invoice for $13,251.90 and another invoice dated July 28, 2009 for $3,113.32 were not admitted into evidence. The court found that Annette was not at the company at the time the invoices were prepared and was not qualified to testify as to the record keeping procedures of the secretary.
A certificate of capital improvement issued by Lorenz to Chateau, dated June 22, 2009, which was admitted into evidence, stated that the kitchen and bathroom renovations were "furnished and installed" in Apt 4K. The certificate did not state the costs for the improvements that had been performed or the final price of the work.
Baigelman testified that the registration with DHCR stating that Apt 4K was decontrolled had been prepared by him or under his supervision. However, he did not remember if the improvements to Apt 4K in 1995 cost $19,785.60, which was the amount necessary in order to justify the increase in rent from $683.36 to $1,175. He also did not remember if the increase from $1,175 to $1,270 in 1997 or 1998 was justified by the expenditure of $3,800 or even the nature of the work completed at that time.
During the course of Baigelman's testimony, Supreme Court admonished him for not having a recollection of the alleged improvements made to Apt 4K. Instead, his testimony was based only on the documents shown to him on the stand.
Supreme Court found that the documentary evidence did not establish the claimed improvements. The court concluded that defendants were not entitled to a rent increase for the $60,000 billed by HFM as it failed to substantiate HFM's invoice for $60,000. Defendants did not produce a witness with personal knowledge substantiating that the work shown on the invoice was actually completed in Apt 4K. Nor did they present a witness confirming payment of the invoice. The court noted that Baigelman did not remember and did not actually inspect the work claimed on the invoice. Molen was never on the job site and did not perform a final inspection. Supreme Court observed that the $63,097.81 check to HFM did not indicate that it was for work in Apt 4K, and it was for an amount that was greater than the invoice, casting doubt on what work the check covered.
Supreme Court further found that defendants failed to substantiate their claim for plumbing work by Lorenz. The Lorenz invoices were not admitted into evidence. The court noted that the check to Lorenz did not indicate that it was for work done in Apt 4K. The certificate of capital improvement did not list the final cost for the alleged improvements. The check for $16,365.27 tendered to Lorenz did not identify the apartment in which work was allegedly performed. Further, the court did not credit Baigelman's testimony as he could not remember which plumbing improvements, if any, were performed in Apt 4K. Nor did Baigelman know whether the check was specifically for work done in Apt 4K.
Similarly, Annette Lorenz did not work for Lorenz during the relevant time period and had no personal knowledge of the plumbing work in Apt 4K. She did not have a role in creating the certificate for capital improvement. Accordingly, the court concluded that defendants were not entitled to a rent increase based on the plumbing work in the apartment.[FN1]
Supreme Court also found that defendants failed to show that the work claimed in 2009 was not duplicative of the improvements performed in 1995 and 1998, or that the earlier work [*13]had outlasted its useful life. The court noted that Baigelman did not remember what was done in 1995 and 1998. Defendants did not offer the DHCR registration forms describing the improvements.
Therefore, defendants were entitled to a monthly rent increase of 1/40th of the cost of this improvement, or $141.25. The court found that the legal rent for Apt 4K was thus $1,591.25, well below the $2,000 threshold necessary for rent destabilization on the ground of high rent vacancy decontrol.
Finally, the court determined that plaintiff was entitled to treble damages as defendants failed to rebut the presumption of willfulness. The court found that defendants did not substantiate the claimed improvements and offered no evidence of a good faith belief that the improvements were allowable or were actually performed.
Supreme Court directed entry of a judgment in favor of plaintiff and against defendants jointly and severally. Owners was directed to provide plaintiff with a rent stabilized lease. The court severed the issue of plaintiff's reasonable attorneys' fees and referred the matter to a special referee for a hearing.
Defendants appeal.
Improvements
In order to obtain a rent increase for a rent stabilized apartment, the owner must substantiate improvements with documentation demonstrating that the work was actually performed and that the money was spent on the improvements (9 NYCRR 2522.4; see Altschuler v Jobman 478/480, LLC, 135 AD3d 439, 440 [1st Dept 2016], lv dismissed 28 NY3d 945 [2016], lv denied 29 NY3d 903 [2017]).
There must be sufficient proof that work has been performed (see Altschuler, 135 AD3d at 440 [the affidavit of a lease administrator stating the amount of improvements performed was insufficient as it was unsupported by "bills from a contractor, an agreement or contract for work in the apartment, or records of payments"] [internal quotation marks omitted]; 72 Realty Assoc. v Lucas, 101 AD3d 401, 402-403 [1st Dept 2012] [the record does not contain anything to support landlord's renovation claim, including for example, bills from a contractor, an agreement or contract for work in the apartment, or records of payments for the renovations]; Matter of 985 Fifth Ave., v State Div. of Hous. & Community Renewal, 171 AD2d 572, 574 [1st Dept 1991], lv denied 78 NY2d 861 [1991] [an invoice provided by a landlord for air conditioners "did not match the serial numbers listed in the letter intended to prove that seven units had been installed in the tenant's apartment"]).
Here, the trial court conducted a fact-intensive inquiry to determine whether defendants met their burden to establish that they made individual apartment improvements in a sum exceeding $21,972. Supreme Court was in the best position to assess the evidence and credibility of the witnesses. The trial court gave little weight to the testimony of Baigelman, Molen, and Lorenz as the witnesses lacked personal knowledge of the work performed in Apt 4K. The trial court properly found that defendants failed to establish that the general contractor and the plumbing contractor actually performed the work in Apt 4K that was referenced in their invoices, and that they were paid for the work. Nor did the documentary evidence verify that improvements were made in Apt 4K.
In short, it cannot be said that the trial court's findings are so contrary to the weight of the evidence that "it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence" (Thoreson, 80 NY2d at 495 [internal quotation marks omitted]).
The majority ignores Supreme Court's findings of fact and instead conducts a de novo review of the record citing to Northern Westchester Professional Park Assoc. v Town of Bedford, (60 NY2d 492, 499 [1983]) and Green v William Penn Life Ins. Co. of N.Y. (74 AD3d 570, 572 [1st Dept 2010]). While an appellate court may render a judgment it finds warranted by the facts, [*14]"due regard must be given to the decision of the Trial Judge who was in a position to assess the evidence and the credibility of the witnesses" (Horsford, 32 AD3d at 310 [internal quotation marks omitted]; see also Northern Westchester, 60 NY2d at 499; Green, 74 AD3d at 571).
In any event, a de novo review also supports Supreme Court's findings. The majority reasons that by adding the HFM invoice for $60,000, the Lorenz invoice for $13,251.95 and the CES invoice for $5,650, a total of $78,901.95 of improvements were performed in Apt 4K. It argues that the checks, photographs and testimony "overwhelmingly support[s]" the amount of work done to the apartment. While the math is correct, this finding is not supported by the record, as no legal conclusions could be drawn from the documents in the record without witness testimony connecting them to the work allegedly performed in Apt 4K.
The HFM invoice for $60,000 notes that the job location is "Suite #4K." However, defendants failed to substantiate that the work on the invoice was performed or that the amount of $60,000 was paid for the improvements. Baigelman's testimony is built on a series of assumptions. He assumed that he received the invoice in the regular course of business, he assumed that there was a gut renovation of a kitchen and bathroom, he assumed that he had inspected the apartment, he assumed that he had paid the invoice and he assumed that the check for $63,097.81 was for work done on Apt 4K and possibly for additional work that was done. In fact, the check to HFM for $63,097.81 does not reference that it was for work performed in Apt 4K, and is for an amount that is greater than the invoice. The majority connects the check with the invoice with Baigelman's testimony, which Supreme Court found to not be credible.[FN2]
Molen identified the invoice and testified that HFM performed the work reflected in the invoice. However, he conceded that he was not on the job site and did not perform a final inspection. He relied on information provided to him by his workers to prepare the invoice. He also admitted that in 1999, he and HFM pleaded guilty to commercial bribery based on a kickback scheme orchestrated by him. Except for Molen's testimony, which Supreme Court found to not be credible, we note that the majority has not pointed to evidence that proves that work was performed in Apt 4K.
Similarly, the alleged plumbing work performed by Lorenz was not substantiated by testimony or documentary evidence. The invoice for $13,251.90 was not admitted into evidence by the trial court. The majority credits Baigelman but ignores the inconsistency in his testimony and conflicting documentary evidence. In fact, Baigelman did not recall the nature of the plumbing work reflected on the invoice and merely identified his handwriting on the invoice. He could only speculate that he had paid the invoice. He also could not say if the check dated October 8, 2009 for $16,365.27 was for the work reflected on the invoice. The check was for more than the invoice and does not reference the invoice or apartment number where the work was allegedly performed.
Annette Lorenz, the only witness called to testify on the plumbing work, did not work for Lorenz at the time the work was allegedly performed on Apt 4K. She had no personal knowledge of the work reflected on the certificate of capital improvement and did not visit the [*15]job site. The certificate by Lorenz did not list the costs or final price for the work described in Apt 4K.
Contrary to the majority's factual findings, the photographs do not corroborate that work was performed by HFM and Lorenz on Apt 4K. The photographs, which were offered into evidence by plaintiff, do not show what work was done or whether they depict improvements that are contemporaneous to the work actually performed in 2009. The majority attempts to use plaintiff's testimony that the photographs "fairly and accurately" depict the improved condition of Apt 4K in 2009. However, plaintiff stated that the photographs were taken in 2016, not in 2009. In fact, plaintiff submitted the photographs to show that no improvements were depicted. Defendants' counsel even initially objected to the introduction of the photographs into evidence and plaintiff's testimony regarding them, stating that "[t]he condition of the apartment today as opposed to what it was in 2009 . . . is irrelevant."
Only during closing arguments did defendants' counsel argue that the photographs depicted improvements and corroborated the invoices and checks defendants presented, even though the photographs were not shown to defendants' witnesses. Argument by defendants' counsel that the photographs show a renovated apartment, which is adopted by the majority, is not evidence (Sperduti v Mezger, 283 AD2d 1018, 1019 [4th Dept 2001]; Merenda v Consolidated Rail Corp., 248 AD2d 684, 687 [2d Dept 1998]). In fact, the majority's uncertainty about what the photographs corroborate is reflected by its use of the words it "appears to be" and "probably." In sum, the photographs are of no evidentiary value to the issues in this case.
The majority mischaracterizes Supreme Court's findings by stating that Supreme Court improperly imposed a "personal knowledge" requirement. To the contrary, Supreme Court correctly found that there must be adequate documentation of the improvements to remove plaintiff's apartment from rent stabilization. This finding is fully supported by DHCR Policy Statement 90-10 [1990], which requires that the costs of improvements must be established by adequate documentation, which should include at least one of the following: "(1) Cancelled checks contemporaneous with the completion of the work; (2) Invoice receipt marked paid in full contemporaneous with the completion of the work; (3) Signed contract agreement; (4) Contractor's affidavit indicating that the installation was completed and paid in full."
Here, the checks to HFM and Lorenz do not state that they were for improvements made to Apt 4K or that they were issued contemporaneously with the completion of the work. The invoices are not marked paid in full. Finally, there is no signed contract agreement or contractor's affidavit (cf. Jemrock Realty Co. LLC v Krugman, 64 AD3d 290, 296, 298 [1st Dept 2009] [where a "signed contract agreement" and "contractor's affidavit indicating that the installation was completed and paid in full" was produced], revd on other grounds, 13 NY3d 924 [2010]). The inadequate documentation was not cured by the testimony of the witnesses produced by defendants. There is no reliable testimony that the invoices and checks were issued contemporaneously to the completion of the work in Apt 4K.
The majority states that the documentation submitted by defendants demonstrates that the improvements were performed in accordance with the 90-10 evidentiary standards and our precedent (see Stulz v 305 Riverside Corp., 150 AD3d 558 [1st Dept 2017], lv denied 30 NY3d 909 [2018]; Matter of Kolinsky v Towns, 137 AD3d 496 [1st Dept 2016]). However, in Stulz, the defendant landlord "provided a construction contract, cancelled checks, and the testimony of the contractor" as substantiation for the improvements, which Supreme Court there found to be credible (Stulz, 150 AD3d at 559). Here, Supreme Court found that the testimony of Molen and Lorenz did not substantiate the claimed improvements. Further, Supreme Court in Kolinsky deferred to the DHCR determination as it did not find it "arbitrary and capricious" (Kolinsky, 137 AD3d at 497). Accordingly, neither case supports the majority's contention that our precedent [*16]mandates a different result.
We note that this appeal was calendared together with Smoke v Windermere Owners LLC and Chekowsky v Windermere Owners, LLC (Appeal Nos. 7932-7935)[FN3], which involve the same defendants sued by different tenants of the Windermere for unlawful high rent deregulation. In Chekowsky v Windermere Owners, LLC (114 AD3d 541 [1st Dept 2014]), we found in an earlier appeal that the defendants failed to provide adequate documentation for improvements which resulted in the removal of the apartment from rent stabilization. We rejected the defendants' employee's affidavit, finding that "the employee was not a person with knowledge of the facts, and her statement was unsupported by any admissible evidence, such as affidavits by the various vendors she claimed would testify to additional improvements at trial, and devoid of an explanation of why they are not now available" (id. at 542).
Similarly, in Smoke v Windermere Owners LLC (130 AD3d 522 [1st Dept 2015]), we found the defendants liable for rent overcharges based on their inability to provide adequate documentation for individual apartment improvements that was the basis for removing the apartment from rent stabilization.
The majority argues that both Smoke and Chekowsky may be distinguishable, because the defendants proffered no documentation to support their claimed improvements in those cases. We disagree. In Chekowsky (114 AD3d at 542), we discussed the inadequacy of the evidence proffered and expressly stated that the evidence was inadequate. Similarly, in Smoke (130 AD3d at 522), we affirmed the trial court's finding that "defendant Windermere Owners LLC [was] liable for rent overcharges based on its inability to provide adequate documentation for the improvements." Here, defendants' alleged improvements are not supported by adequate documentation.
Accordingly, even a de novo review of the evidence fully supports Supreme Court's findings that defendants failed to establish individual apartment improvements to Apt 4K.
Useful Life
A landlord is entitled to a rent increase equal to 1/40th of the total cost of any qualifying improvements made or new furnishings to rent stabilized apartments (9 NYCRR 2522.4[a] [1]; Administrative Code § 26-511[c][3]), but is not entitled to an increase for improvements or replacements to furnishings and equipment that have not yet exceeded their useful life (9 NYCRR 2522.4[a][1]; Administrative Code § 26-511[c][13]). A useful life schedule is provided in 9 NYCRR 2522.4(a)(2)(i)(d), with periods ranging from 15 to 30 years based on the specified improvement. In order to obtain a rent increase, a defendant bears the burden to demonstrate that the useful life was exceeded for the claimed improvement (see 985 Fifth Ave., 171 AD2d at 574-575).
Defendants argue that Supreme Court should not have made a finding that the work in 1995 and 1998 had not outlasted its useful life, because plaintiff "waived" this issue, having failed to plead it as an "affirmative defense." They also contend that absent a showing of fraud, the trial court was precluded from reviewing events going back more than four years from the date of the filing of the complaint, August 30, 2007.
The majority adopts defendants' arguments that useful life was waived. Unable to cite a [*17]case for this proposition, the majority argues that the issue is not properly before us on appeal.
We disagree. Since plaintiff did not have the burden to establish useful life, she was not required to plead it in her complaint (see Scholastic Inc. v Pace Plumbing Corp., 129 AD3d 75, 86 [1st Dept 2015] [a defendant bears the burden of pleading and proving its affirmative defenses]). Accordingly, Supreme Court properly made findings with respect to useful life. The issue is squarely before us.
The majority argues that defendants were prejudiced because plaintiff did not raise useful life in her complaint. Since defendants' answer should have interposed the affirmative defense of useful life, they cannot now on appeal claim prejudice for their own omission. Moreover, we note that the majority's concern that defendants were prejudiced was not raised by defendants at trial, in their posttrial submissions, or even on appeal.
Next, the majority contends that under Matter of Rockaway One Co., LLC v Wiggins (35 AD3d 36, 41-43 [2d Dept 2006]), defendants are not required to comply with the DHCR useful life schedule and improvement review process. This statement is correct only in part. In fact, the Second Department stated, "[T]he DHCR has declined to review [improvement] increases except upon the complaint of a tenant who has actually been charged such an increase" (id. at 42 [emphasis added]). Here, plaintiff has filed a complaint asserting that the increase she was charged is unlawful.
Contrary to the majority, the useful life schedule in 9 NYCRR 2522.4(a)(2)(d) applies to these improvements, as it references the need for review and compliance of both bathroom and kitchen upgrading, which were the improvements allegedly performed on Apt 4K (see 9 NYCRR 2522.4[a][2][d][11], [12]; see also Kuzmich v 50 Murray St. Acquisition LLC, 157 AD3d 556, 557 [1st Dept 2018] ["[a] statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent"] [internal quotation marks omitted]).
Turning next to the issue of the look-back period, it is well settled that the court may disregard the four-year statute of limitations and examine the entire rental history of the apartment in order to determine the legality of the base rent where it has been found that the landlord has engaged in a fraudulent scheme (see Thornton v Baron, 5 NY3d 175, 181 [2005]; see also Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. Of Rent Admin., 15 NY3d 358, 365 [2010]; Matter of Regina Metro. Co., LLC v N.Y. State Div. of Hous. & Community Renewal, 164 AD3d 420, 432 [1st Dept 2018], appeal dismissed 32 NY3d 1085 [2018]).
Here, plaintiff advanced a colorable claim of fraud within the meaning of Grimm. There was substantial evidence that defendants engaged in a scheme to set an illegal rent to remove Apt 4K from rent stabilization.
Accordingly, Supreme Court correctly found that defendants failed to demonstrate that the useful life of the improvements made to Apt 4K in 1995 and 1998 had been exceeded entitling them to a rent increase for the claimed 2009 improvements.
Treble Damages & Attorneys' Fees
Rent Stabilization Law § 26-516(a) provides that "[o]nce [an] owner is found to have charged an unlawful rent, it is presumed to have acted badly and the burden is placed upon it to establish by a preponderance of the credible evidence that it did not know the rent it was charging was unlawful" (Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 103, 107 [1st Dept 2007]). If the owner fails to make such a showing, treble damages must be imposed as a penalty (id.).
The record supports Supreme Court's finding that the rent overcharges by defendants were willful. Defendants failed to substantiate the improvements or that they paid the sums on the claimed invoices. No evidence was adduced as to defendants' good-faith belief that the rent [*18]overcharges were justified.
Based on my view that the overcharge was willful, plaintiff, as the prevailing party, should be entitled to an award of reasonable attorneys' fees (see 9 NYCRR 2526.1[d]; Conason v Megan Holding, LLC, 109 AD3d 724, 727 [1st Dept 2013], affd in relevant part 25 NY3d 1 [2015]). Accordingly, the matter should be remanded for a hearing on plaintiff's reasonable attorneys' fees and costs in responding to the appeal (see Duell v Condon, 200 AD2d 549, 549-550 [1st Dept 1994], affd 84 NY2d 773 [1995]; Washburn v 166 E. 96th St. Owners Corp., 166 AD2d 272, 273 [1st Dept 1990]).
Judgment, Supreme Court, New York County (Lucy Billings, J.), entered October 26, 2017, reversed, on the law and the facts, without costs, the judgment vacated, and the complaint dismissed. The Clerk is directed to enter judgment accordingly. Appeal from order, same court and Justice, entered October 18, 2017, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Kahn, J. All concur except Kapnick and Singh, JJ. who dissent in an Opinion by Singh, J.
Friedman, J.P., Sweeny, Kapnick, Kahn, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 13, 2018
CLERK



Footnotes

Footnote 1:, Moreover, contrary to the dissent's observation, in conducting a de novo review of the evidentiary facts, this Court is not ignoring the Northern Westchester Court's reference to taking the trial court's advantage of seeing the witnesses into account. The Northern Westchester Court specified that that factor is appropriately taken into account "in a close case" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d at 499). This is not such a case, however. Moreover, if this Court were to follow the dissent's apparent suggestion and defer to the trial court in all cases in which witnesses testified on the basis of the trial court's ability to personally assess the credibility of witnesses, this Court could never conduct a de novo review of any trial at which witnesses were called to testify.

Footnote 2: On May 6, 2016, after commencement of the trial and prior to its conclusion, the DHCR issued Operational Bulletin 2016-1
(2016-1), which "supersedes DHCR's Policy Statement 90-10 regarding the criteria which will be used when assessing an owner's substantiation for IAI expenditures." The 2016-1 criteria include:
"1. Cancelled check(s) (front and back) contemporaneous with
the completion of the work or proof of electronic
payment;
"2. Invoice receipt marked paid in full contemporaneous with the completion of the work;
"3. Signed contract agreement; and
"4. Contractor's affidavit indicating that the installation
was completed and paid in full."
2016-1 further provides that "an owner should submit as many of the four listed forms of proof as the owner is able to provide . . . ." On this appeal, the parties appear to agree that 90-10 is the controlling standard, however. 

Footnote 3: Notwithstanding the dissent's position that we have mischaracterized the trial court's decision by describing it as imposing a personal knowledge requirement, the trial court's decision, in fact, found that "defendants failed to substantiate [HFM's] bill for $60,000.00 in general contracting work in plaintiff's apartment" because they "produced no witness with personal knowledge substantiating that the work shown on the invoice was completed in Apartment 4K" (DiLorenzo v Windermere Owners LLC, 2017 WL 9857178, *2 [Sup Ct, NY County Oct. 18, 2017]. Furthermore, in finding that "defendants failed to substantiate that the plumbing work claimed actually was completed in Apartment 4K," the trial court observed that "Annette Lorenz . . . had no personal knowledge of any plumbing work performed in Apartment 4K" (id.).

Footnote 4: Contrary to the dissent, the review process referenced in Wiggins for filing of complaints references complaints filed before the DHCR, which is not the case here. Furthermore, the bathroom and kitchen upgradings to which 9 NYCRR § 2522.4(a)(2)(d)(11) and (12) refer are among those listed as "Major Capital Improvements," and do not apply to the IAIs performed in the kitchen and bathroom in this case.

Footnote 1: Supreme Court found that defendants only substantiated the claim for $5,650 in electrical work by Contractors Electrical Services (CES), since defendants (1) submitted an invoice for the work, (2) had the person who prepared the invoice confirm the work was completed in Apt 4K, and (3) that same person confirmed that the invoice was paid in full.

Footnote 2: The majority contends that Supreme Court did not make credibility determinations simply because it did not reference the word credibility in its opinion. While it is correct the word "credible" is not used, the record reflects that Supreme Court consistently admonished Baigelman, Molen, and Annette Lorenz for not having any recollection of the work done in Apt 4K, and rejected in large part their testimony that the purported improvements were made to the apartment.

Footnote 3: We previously resolved the issue of whether the apartments were properly removed from rent stabilization. The current appeals involve the trial court's findings as to willfulness and treble damages. We decide these appeals simultaneously herewith and affirm Supreme Court's findings of willfulness and treble damages.